[No. 7290–4–II.   Division Two.   March 17, 1986.]

TIMOTHY M. SAYAN, *Respondent,* v. UNITED SERVICES
AUTOMOBILE ASSOCIATION, *Appellant.*

*Ingrid W. Hansen* and *Betts, Patterson & Mines,* for
appellant.

*Frank B. Ladenburg, Jr.,* and *Troup, Christnacht,
Ladenburg & McKasy,* for respondent.

REED, J.—United Services Automobile Association (USAA) appeals a summary judgment that Timothy Sayan, an insured under a USAA automobile liability policy, is entitled to recover damages under the uninsured motorist coverage (UMC) provisions of that policy. USAA also appeals from the denial of summary judgment in its own favor. The question before us is whether the statutory language, "legally entitled to recover [from an uninsured motorist]," was intended to exonerate an insurer from liability to its insured under UMC coverage where, by virtue of federal law, the uninsured motorist responsible for the insured's injuries enjoys an absolute immunity from suit. We answer in the affirmative, reverse the summary judgment for Sayan, and remand for entry of summary judgment for USAA.

Timothy Sayan was an army officer stationed at Fort Lewis. At the time of his accident Sayan held a USAA standard automobile liability policy. The policy protected him, as required by statute, if he was "legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit–and–run motor vehicles because of bodily injury . . . resulting therefrom [sic], . . ." Laws of 1967, ch. 150, § 27, p. 737 (Although this statute was significantly amended effective September 1, 1980, see Laws of 1980, ch. 117, § 1, p. 361, to require "underinsured" motorist coverage, Sayan's policy was written before that amendment, was in compliance with the 1967 statute, and would not be governed by the 1980 statute until renewal.).[1]

On December 4, 1980, Sayan was in the performance of military duty on Fort Lewis and was riding in a military vehicle. Another member of the military, Thomas Smaller,

---

[1]Citations to both state and federal statutes are to those session laws or codifications in effect on December 4, 1980, the date of the accident, unless otherwise indicated.

while in the performance of duty and driving a government vehicle, negligently drove into an intersection on Fort Lewis without stopping, and struck the vehicle in which Sayan was a passenger. Sayan sustained serious injuries, including the loss of his right eye. Smaller had no automobile liability insurance. However, when Sayan sought benefits under the UMC provision of his policy, USAA asserted that, under federal law, Smaller enjoyed complete immunity from suit. Because under both state law and the policy terms the insurer was obligated to pay only those damages that Sayan was "legally entitled to recover," USAA denied UMC benefits.

Sayan concedes that under applicable federal law, he cannot successfully maintain an action against either Smaller or the United States. Nevertheless, he sought a declaratory judgment against USAA.[2] At trial both Sayan and USAA moved for summary judgment. Sayan was successful, USAA was not, and this appeal followed.

### The Tortfeasor's Immunity From Suit

Through the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1976), the United States government has waived sovereign immunity against most actions for the negligent torts of its employees. However, if a member of the armed services suffers injuries that "arise out of or are in the course of activity incident to service," he has no cause of action against the United States, because it was not the intent of the Federal Tort Claims Act to waive sovereign immunity in the case of service–connected injuries. *Feres v. United States,* 340 U.S. 135, 146, 95 L. Ed. 152, 71 S. Ct. 153 (1950). The *Feres* doctrine also forbids suits against individual members of the military. *Bailey v. DeQuevedo,* 375 F.2d 72 (3d Cir.), *cert. denied,* 389 U.S. 923, 19 L. Ed. 2d 274, 88 S. Ct. 247 (1967). Thus, because

---

[2]Sayan joined Smaller in this action, but sought no affirmative relief from him. Eventually, although he never amended his complaint to seek any relief, Sayan obtained a default order against Smaller. Smaller is not a party to this appeal.

both Sayan and Smaller were on military duty when the accident occurred, Sayan cannot recover from either the United States or Smaller.

Further, within the Federal Tort Claims Act is the Federal Drivers Act, 28 U.S.C. § 2679(b) (1976). Under the Federal Drivers Act a suit against the United States under the Federal Tort Claims Act is the exclusive remedy "for injury or loss of property or personal injury or death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment . . ." Therefore, Smaller has a double immunity from suit, while the exclusive remedy that Sayan otherwise would have against the United States is denied him by the *Feres* doctrine.

### Uninsured Motorist Coverage

Sayan characterizes the issue in this case as whether USAA may rely on Smaller's immunity from suit as a defense to Sayan's claim for UMC benefits. He urges on us an argument accepted by the Supreme Court of Louisiana, that the words "legally entitled to recover" in that state's UMC statute "mean simply that the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." *Booth v. Fireman's Fund Ins. Co.,* 253 La. 521, 529, 218 So. 2d 580, 583 (1968).

The Louisiana court's rationale was that: "[t]he uninsured motorist provision is not insurance or indemnification for the uninsured motorist, and the insurer does not stand in the shoes of the uninsured motorist who is the tort feasor." *Booth,* 253 La. at 528, 218 So. 2d at 583. Therefore, the insurer in *Booth* was not to be given the advantage of the uninsured motorist's *personal defense* that the insured victim's suit was barred by a statute of limitations. Later Louisiana decisions similarly have refused to permit UMC carriers to assert the tortfeasor's personal defense of interspousal immunity as a defense against UMC recovery. *Guillot v. Travelers Indem. Co.,* 338 So. 2d 334, 336 (La.

Ct. App. 1976); *Gremillion v. State Farm Mut. Auto. Ins. Co.*, 302 So. 2d 712, 715 (La. Ct. App. 1974).

USAA argues that simple adherence to Louisiana's holding would not assist Sayan, even were he to persuade us that the UMC carrier should not be able to rely on a tortfeasor's personal defenses. Rather, USAA stresses that, unlike the so–called personal or procedural defenses, Smaller's immunity from suit arises substantively by virtue of federal law, and that Sayan *has no cause of action* against his tortfeasor.

Although the question is one of first impression in Washington, other courts almost uniformly have refused to permit UMC recovery when the victim of the tortfeasor is denied a cause of action in the first instance, whether by common law or by statute. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Crockett,* 103 Cal. App. 3d 652, 163 Cal. Rptr. 206 (1980) (Hawaii no–fault insurance scheme barred suit against the tortfeasor: no UMC recovery); *Hopkins v. Auto–Owners Ins. Co.,* 41 Mich. App. 635, 200 N.W.2d 784 (1972) (workers' compensation statute abolished any tort cause of action against a fellow employee or employer tortfeasor: therefore no UMC recovery); *Boyd v. Wright,* 422 So. 2d 529 (La. Ct. App. 1982) (same); *Byrn v. American Universal Ins. Co.,* 548 S.W.2d 186 (Mo. Ct. App. 1977) (guest statute barred suit against the tortfeasor: no UMC recovery); *York v. State Farm Fire & Cas. Co.,* 64 Ohio St. 2d 199, 414 N.E.2d 423 (1980) (sovereign immunity of a municipality barred suit against a negligent fire department: no UMC recovery). As one scholar has expressed the general rule followed by the courts of many states:

> [If] a cause of action is not created as a result of the tortfeasor's negligent conduct, the insured is not considered to be "legally entitled" within the contemplation of the policy, but if a cause of action is created, the insured is considered "legally entitled" although a personal defense or procedural restriction bars its enforcement.

2 I. Schermer, *Automobile Liability Insurance* § 24.01, at 24–2 (2d ed. 1985).

Sayan, however, argues that such a rule is based upon a distinction without a difference, and that Washington's public policy permitting broad access to UMC recovery, *see Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 209–10, 643 P.2d 441 (1982), *aff'g on rehearing* 95 Wn.2d 373, 622 P.2d 1234 (1980); *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 332, 494 P.2d 479 (1972), must lead to recovery in his case. He bolsters this argument with the rule that insurance contracts should be construed against those who write them, particularly when the insurer is attempting to enforce an exception to or an exclusion from coverage. *See Nationwide Mut. Ins. Co. v. Kelleher,* 22 Wn. App. 712, 715, 591 P.2d 859 (1979). But the problem posed here, and not recognized by the courts to which we have been referred, is not one created by the drafters of Sayan's insurance contract. This is not a case where, *by mere policy exclusion or exception,* the insurer seeks to nullify coverage clearly mandated by statute and otherwise provided by the general insuring clauses of the policy. Rather, the problem lies in the statute, and the issue is one of legislative intent.

Because the case law of other jurisdictions has placed too little emphasis on legislative intent and, because drawing a distinction between personal defenses and substantive bars does little to answer the public policy argument, we prefer a solution that relies on and effectuates our Legislature's intent.

### STATUTORY CONSTRUCTION

Only if the meaning of the statute is not apparent on its face may we resort for construction to the aid of legislative history and related statutes. *Department of Transp. v. State Employees' Ins. Bd.,* 97 Wn.2d 454, 458–59, 645 P.2d 1076 (1982). Statutory language is ambiguous when it is susceptible to more than one reasonable interpretation. *Adams v. Department of Social & Health Servs.,* 38 Wn. App. 13, 16, 683 P.2d 1133 (1984). Clearly, the phrase "legally entitled to recover", without more, conjures up two equally reasonable concepts. One plausible reading is that there is coverage only if the insured is able to obtain a

money judgment through judicial process. An equally reasonable meaning, however, is that the insured need only prove "fault on the part of the uninsured motorist which gives rise to damages", *Booth v. Fireman's Fund Ins. Co.,* 253 La. at 529, 218 So. 2d at 583. "An ambiguity exists when there is a difference of opinion among courts of different jurisdictions with respect to the construction of terms in insurance policies." *Crunk v. State Farm Fire & Cas. Co.,* 38 Wn. App. 501, 508, 686 P.2d 1132 (1984). *See also* Annot., *Division of Opinion Among Judges on Same Court or Among Other Courts or Jurisdictions Considering Same Question, as Evidence That Particular Clause of Insurance Policy Is Ambiguous,* 4 A.L.R.4th 1253, 1256 (1981). The rationale should be no different when the particular language in question is found in the statute mandating the coverage.

An ambiguity or uncertainty thus exists as to what the Legislature intended by the phrase "legally entitled to recover," and we must resort to the use of the recognized aids to ascertain legislative intent. Ordinarily we would turn first to legislative history, but we have not been directed to any pertinent record of the 1967 Legislature.[3] We therefore look to a statutory scheme closely related to UMC, the financial responsibility statutes in effect at the time of Sayan's accident: RCW 46.29, as amended by Laws of 1980, ch. 117, p. 361 (effective September 1, 1980).

Earlier in this century state legislatures attempted to encourage, or even require, motorists to obtain liability

---

[3]We recognize that in 1967 Washington adopted a UMC statute that had been adopted with little variation by perhaps 34 other states. *See* 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 2.2, at 23 & n.5 (1985). We also recognize that the statute, including the words "legally entitled to recover," mirrors language devised by the insurance industry for the first uninsured motorist coverage offered as a part of a standard liability policy, before statutes required that provision. *See* 1958 Standard Family Automobile Liability Policy Part IV, "Protection Against Uninsured Motorists," in N. Risjord & J. Austin, *Automobile Liability Insurance Cases* 69 (1964); *see also* A. Widiss, *supra* at § 3.1. While interesting, this bit of history has neither helped nor hindered us in our quest for the true legislative intent behind the phraseology.

insurance, A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 1.1 (1985); P. Pretzel, *Uninsured Motorists* § 1, at 3–4 (1972). Washington adopted such a financial responsibility statute in 1939. Laws of 1939, ch. 158, p. 459. The stated purpose primarily was "to give monetary protection to that ever changing and tragically large group of persons who, while lawfully using the highways themselves, suffer serious injury through the negligent use of those highways by others." *LaPoint v. Richards,* 66 Wn.2d 585, 590, 403 P.2d 889 (1965).

At the time of Sayan's accident, a driver involved in an automobile accident involving personal injury or property damage in excess of a certain amount, RCW 46.29.060, was required to deposit with the Department of Licensing proof of his ability to satisfy the damages likely to arise therefrom. RCW 46.29.070(3). That proof could be a certificate of automobile liability coverage. RCW 46.29.080, 46.29-.090(3). Those without such coverage were required to deposit security, not only for that accident, but also as proof of future financial responsibility. RCW 46.29.420. Again, that proof could be a certificate of automobile liability coverage insuring "against loss from the *liability imposed by law* for damages arising" from his use of an automobile. (Italics ours.)[4] Laws of 1980, ch. 117, § 6(2)(b), p. 364 (effective Sept. 1, 1980; codified at RCW 46.29-.490(3)).[5] The same scheme remains in effect today. *See*

---

[4]The three other acceptable proofs of future financial responsibility (a surety bond, a deposit of money or securities or a certificate of self–insurance) also must guarantee payment either of a "final judgment . . . for damages," RCW 46.29.530, or "a judgment . . . for damages," RCW 46.29.560, or "*the same amounts that an insurer would have been obliged to pay under an owner's motor vehicle liability policy*". (Italics ours.) RCW 46.29.450(4).

[5]We note that the phrase here quoted was employed in Washington's first financial responsibility statute, see Laws of 1939, ch. 158, § 23(a)(3), p. 472, and has been retained ever since. Compare the language of the standard liability policy: "The company will pay on behalf of the insured all sums which the insured shall become *legally obligated to pay* as damages . . ." (Italics ours.) 1974 Standard Coverage Part, Basic Automobile Liability Insurance, in N. Risjord & J. Austin, *Automobile Liability Insurance Cases* 302 (Supp. 1974).

RCW 46.29.

In 1967 Washington supplemented this protection of innocent motorists by mandating uninsured motorists coverage in every automobile liability policy, unless the insured specifically waived such coverage. Laws of 1967, ch. 150, § 27, p. 737. The object was to fill a "gap" in the availability of resources for the compensation of innocent auto accident victims, that is, to remedy the inability of many uninsured drivers to satisfy the requirements of security for damages in an accident and the unwillingness of drivers to maintain the insurance that constituted proof of financial responsibility for the future. The innocent victim thus still might obtain compensation from his own insurer. *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972). *Cf. Winner v. Ratzlaff*, 211 Kan. 59, 63–64, 505 P.2d 606 (1963) (similar rationale in Kansas). The question is, however, should an innocent victim have a more effective remedy against his own UMC carrier than he would have against the negligent driver himself who is violating a requirement that he, at best, satisfy only "the liability imposed by law" on him?

We think not. "Legally entitled to recover [from a negligent driver]" and "the liability imposed by law [on the negligent driver]" are complementary, and the ambiguous scope of the first phrase is paralleled and explained by the somewhat more precise language of the second. A statutory immunity from suit would protect the negligent driver from tort liability, even were he complying with the financial responsibility statutes and furnishing evidence of a liability policy that met the statutory requirement. We see no evidence that the Legislature intended for the victim of an uninsured motorist to receive compensation that he could not obtain even were the negligent driver in compliance with the financial responsibility statutes.

Because the essential element of those statutes is liability insurance or its equivalent in security, this conclusion, although reached here for the first time in Washington, is in accord with our Supreme Court's enunciation of the

affirmative purpose of uninsured motorist coverage. "The purpose of the [UMC] statute is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance." *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979). We reject as inconsistent with our legislative scheme, and therefore unpersuasive, the holdings of those few cases that ignore the problem of substantive bar to recovery from the tortfeasor and thereby approve UMC recovery. *See, e.g., Watkins v. United States*, 462 F. Supp. 980 (S.D. Ga. 1977), *aff'd*, 587 F.2d 279 (5th Cir. 1979) (Federal Drivers Act bar); *Boynton v. Allstate Ins. Co.*, 443 So. 2d 427 (Fla. Dist. Ct. App. 1984) (workers' compensation bar).[6] Furthermore, such holdings are inconsistent with this state's rule, enunciated in a variety of situations, that the insurance company issuing uninsured motorist coverage stands in the shoes of the uninsured motorist, and provides to its insured the coverage that the uninsured motorist's insurance would have provided, had he but maintained such insurance. *See, e.g., Grange Ins. Ass'n v. Hubbard*, 35 Wn. App. 407, 413, 667 P.2d 121, *review denied*, 100 Wn.2d 1023 (1983); *Brummett v. Grange Ins. Ass'n*, 4 Wn. App. 979, 984, 485 P.2d 88 (1971). This is but shorthand for the principle, as one scholar puts it, that:

> Fundamentally, . . . modern uninsured motorist coverage provides a motorist who carries a standard automobile liability policy and who suffers personal injuries

---

[6]We recognize that our holding—that it was the legislative intent that the UMC carrier be required to pay its insured only those damages that he could recover if his tortfeasor had in effect a liability policy that met the standards of the financial responsibility statutes—could lead to a holding in the future that even the availability of a personal defense, rather than a statutory bar such as is presented here, would prevent UMC recovery. If this is so, Washington's rule goes significantly further than does the rule in other states that personal defenses are not available to the UMC carrier. See opinions cited above. However, such a result would not be without precedent, even from courts that have not relied upon an analysis of legislative intent. *See, e.g., Patrons Mut. Ins. Ass'n v. Norwood*, 231 Kan. 709, 647 P.2d 1335 (1982) (interspousal immunity barred UMC recovery); *Aitken v. State Farm Mut. Auto. Ins. Co.*, 404 So. 2d 1040 (Miss. 1981) (same). However, that issue, as posed, is not before us.

by reason of the negligence of an uninsured motorist, rights against his own insurance company co-extensive with those he would have had against the uninsured tortfeasor.

P. Pretzel, *Uninsured Motorists* § 1, at 5 (1972).

## Public Policy

Finally, as to the public policy argument, we have noted Sayan's reliance on several Washington cases dealing with policy limitations and exclusions. *See, e.g., Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982); *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972); *Nationwide Mut. Ins. Co. v. Kelleher,* 22 Wn. App. 712, 591 P.2d 859 (1979). Sayan's only other authority, from which he quotes extensively, is Professor Alan I. Widiss's article, *Uninsured Motorist Coverage: Observations on Litigating Over When a Claimant Is "Legally Entitled To Recover",* 68 Iowa L. Rev. 297 (1983). As we have stated, we have not found other court decisions particularly helpful when construing this state's statutory language. Neither do we find these cases, or Professor Widiss, any more persuasive on the public policy issue. In the absence of any compelling authority, we can only repeat what our Supreme Court said when it upheld the "family exclusion clause" of a homeowner's liability policy:

> "In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy."

*State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 481, 687 P.2d 1139 (1984) (quoting 17 C.J.S. *Contracts* § 211, at 1024 (1963)).

Absent prior expression of public policy from either the Legislature or prior court decisions, our inquiry as to whether the family exclusion clause clearly offends the public good must be answered in the negative. "The term 'public policy,' . . . embraces all acts or contracts which tend clearly to injure the public health, the public mor-

als, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." (Italics omitted.) *LaPoint [v. Richards,* 66 Wn.2d] at 594–95; *Goodier v. Hamilton,* 172 Wash. 60, 19 P.2d 392 (1933) (quoting 6 R.C.L. § 120, p. 712). Such a showing has not been made here. We shall not invoke public policy to override an otherwise proper contract even though its terms may be harsh and its necessity doubtful.

*State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d at 483.

It seems to us that, if there were such a strong public policy as Sayan suggests, the Legislature would not permit liability policies required as proof of financial responsibility to exclude coverage under the "legally obligated to pay" language. Yet there is no suggestion that permitting insurance companies to escape responsibility under their liability policies where the tortfeasor can assert an immunity, whether substantive or personal, contravenes public policy.

Finally, we note that, although the interest of innocent highway users who may be injured by uninsured (now underinsured) motorists was, and remains, a matter of extreme public concern, that concern did not rise to the stature of public *policy* until the Legislature made it so by enacting a requirement that UMC coverage be offered to the insured public. Laws of 1967, ch. 150, § 27, p. 737 (codified at RCW 48.22.030). Public *policy,* as a rule, is recognized by the courts of this state when the Legislature has acted, and not before. Therefore, the courts are not free, under the guise of statutory construction, to expand the requirements of law beyond those that the Legislature has seen fit to require.

It is not the function of the judiciary of this state to determine public policy as it relates to [the financial responsibility that motorists must be required to demonstrate]. That function rests exclusively with the legislative branch of our government. Our legislature has not enacted a compulsory financial responsibility law applicable to the owners and operators of motor vehicles. Appellants' request for such legislation and the pro-

nouncement of public policy should be addressed to the legislature.

*Barkwill v. Englen,* 57 Wn.2d 545, 548, 358 P.2d 317 (1961). We think that, in like manner, Sayan's request for an extension of UMC coverage to situations where a liability policy satisfying our state's financial responsibility laws would not provide coverage must be addressed to the Legislature, and not to the courts.

Reversed and remanded for entry of summary judgment in favor of USAA.

WORSWICK, C.J., and ALEXANDER, J., concur.

Reconsideration denied April 30, 1986.

Review denied by Supreme Court July 8, 1986.