[No. 24776–0–I.   Division One.   August 27, 1990.]

RON ROMANICK, *Appellant,* v. AETNA CASUALTY
AND SURETY COMPANY, *Respondent.*

54

*Patrick H. LePley* and *Tobin & LePley,* for appellant.

*John C. Versnel III, John Patrick Cook,* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent.

SCHOLFIELD, J.—The plaintiff, Ron Romanick, assigns error to the trial court's decision granting Aetna's motion for summary judgment on the theory that Romanick was not entitled to underinsured motorist (UIM) benefits from Aetna. We affirm.

## FACTS

On January 8, 1988, Romanick filed a complaint for declaratory judgment, seeking a determination as to whether he was entitled to UIM benefits under his policy of

auto liability coverage with Aetna for injuries he sustained on January 25, 1982.

Romanick alleges that at the time of his injury, he was a passenger in a motor vehicle owned by his employer, Northwest Packaging, and operated by a fellow employee, Danny Shaffer. Romanick claims that Shaffer's negligence caused the accident.

The Department of Labor and Industries paid Romanick workers' compensation benefits, and the claim was closed on November 14, 1984. However, Romanick alleges that he did not learn the extent of his injuries until November 1, 1987.

On June 26, 1989, Aetna moved for summary judgment of dismissal of Romanick's complaint. By order filed August 15, 1989, the trial court granted Aetna's motion. In its order, the court stated that the case at bar was controlled by *Sayan v. United Servs. Auto. Ass'n*, 43 Wn. App. 148, 716 P.2d 895, *review denied*, 106 Wn.2d 1009 (1986). This appeal timely followed.

## UIM COVERAGE

The issue in this case is whether or not a person who buys UIM coverage is "legally entitled to recover" benefits under that coverage when the injuries received are caused by the negligent actions of a fellow employee, and when RCW 51.04.010 would preclude the insured from bringing an action for negligence against the fellow employee.

Romanick argues that recovery from a UIM carrier is contractual in nature with respect to the policyholder and is not a substitute for a recovery from a tortfeasor, that the public policy behind UIM coverage is to allow insureds to buy broad protection against injuries inflicted by negligent motorists, and the holding in *Sayan v. United Servs. Auto. Ass'n, supra,* is inconsistent with the broad protection UIM coverage affords to victims of irresponsible drivers. Romanick also argues that the term "legally entitled to recover" should be interpreted to mean that the insured be able to

prove fault on the part of the underinsured[1] motorist and damage, and the fact that the underinsured motorist is otherwise immune is not a defense for the insurer.

The term "legally entitled to recover" is found in RCW 48.22.030(2) which reads in pertinent part as follows:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . ..

In *Sayan v. United Servs. Auto. Ass'n, supra,* an Army officer was injured when the military vehicle in which he was riding was struck by another military vehicle negligently driven by an uninsured soldier. The uninsured motorist was immune from suit because the *Feres*[2] doctrine prohibits a serviceman from suing a fellow serviceman under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1976), for negligently inflicted injuries that were service related. *Sayan v. United Servs. Auto. Ass'n, supra* at 149–50. Sayan sought compensation from his insurance company under his uninsured motorist policy. The policy protected him, as required by statute, if he was "legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury . . . resulting therefrom [*sic*], . . .". *Sayan v. United Servs. Auto. Ass'n, supra* at 149 (quoting Laws of 1967, ch. 150, § 27, p. 737).

The *Sayan* court reiterated the rule that the UIM insurer "stands in the shoes" of the uninsured motorist and has the same defenses to a claim that the uninsured motorist would have against the person seeking a recovery against

---

[1]We use the term underinsured pursuant to the definition contained in RCW 48.22.030.

[2]*Feres v. United States,* 340 U.S. 135, 95 L. Ed. 152, 71 S. Ct. 153 (1950).

the motorist. *Sayan v. United Servs. Auto. Ass'n, supra* at 157. Accordingly, the uninsured motorist's immunity from suit was a bar to recovery of UIM coverage because the UIM statute requires coverage only when the insured is "legally entitled to recover" damages from the uninsured motorist. *Sayan v. United Servs. Auto. Ass'n, supra* at 156.

Applying *Sayan* to the facts at bar, Romanick cannot recover UIM benefits. Romanick cannot show that he is legally entitled to recover damages from Shaffer because Shaffer is a fellow employee under the workers' compensation act, and RCW 51.04.010 abolishes claims against fellow servants for injuries incurred during the course of hazardous employment.

Romanick urges this court to overrule the decision in *Sayan* and hold that the term "legally entitled to recover" means that the insured must be able to establish fault on the part of the underinsured motorist that gives rise to damages and must be able to prove the extent of those damages.

Romanick first argues that a recovery from a UIM carrier is contractual in nature with respect to the policyholder and is not a substitute for a recovery from a tortfeasor. He contends that his claim is solely against Aetna and not Shaffer, and thus, Shaffer's immunity as to Romanick's tort claims does not protect Aetna from Romanick's contractual claims.

Romanick is correct in that he has a contractual relationship with Aetna; however, Aetna's duties under that contract are defined in terms of what Romanick is "legally entitled to recover" from Shaffer. In other words, Aetna's liability is gauged by that of Shaffer. Therefore, the relationship between Romanick and Shaffer is relevant in determining Aetna's obligation.

Romanick next criticizes the holding in *Sayan* as being inconsistent with the public policy behind UIM coverage, which is to provide broad protection to victims of irresponsible drivers. In support of this argument, Romanick correctly points out that there are a number of decisions

in other states which are contra to the holding in *Sayan* (*e.g.*, *Barfield v. Barfield*, 742 P.2d 1107 (Okla. 1987); *State Farm Auto. Ins. Co. v. Baldwin*, 470 So. 2d 1230, 55 A.L.R.4th 797 (Ala. 1985)). *See also* Annot., 55 A.L.R.4th 806 (1987).

Despite the fact that there exists a split of authority, we find that *Sayan* is consistent with the public policy behind UIM coverage. In determining public policy, the *Sayan* court focused on legislative intent. *Sayan v. United Servs. Auto. Ass'n, supra* at 153. In absence of pertinent record of the Legislature, the court looked to a statutory scheme closely related to the UIM statute, the financial responsibility statutes, RCW 46.29. A statutory immunity from suit would protect the negligent driver from tort liability, even were he complying with the financial responsibility statutes and furnishing evidence of a liability policy that met the statutory requirement. Thus, the court saw "no evidence that the Legislature intended for the victim of an uninsured motorist to receive compensation that he could not obtain even were the negligent driver in compliance with the financial responsibility statutes." *Sayan v. United Servs. Auto. Ass'n, supra* at 156.

The court went on to note that this was in accord with our Supreme Court's enunciation of the affirmative purpose of UIM coverage. This purpose is to allow an injured party to recover those damages which would have been received had the responsible party maintained liability insurance. *Sayan v. United Servs. Auto. Ass'n, supra* at 157. *See also Keenan v. Industrial Indem. Ins. Co.*, 108 Wn.2d 314, 320–21, 738 P.2d 270 (1987) (noting that the injured party is not entitled to be put in a better position, by virtue of being struck by an underinsured motorist, than she would be had she been struck by a fully insured motorist).

We find that the reasoning in *Sayan* is sound. As stated by that court, if there were such a strong public policy, the Legislature would not permit liability policies

required as proof of financial responsibility to exclude coverage under the "legally obligated to pay" language.

> Public *policy,* as a rule, is recognized by the courts of this state when the Legislature has acted, and not before. . . . [Thus, a] request for an extension of [UIM] coverage to situations where a liability policy satisfying our state's financial responsibility laws would not provide coverage must be addressed to the Legislature, and not to the courts.

*Sayan v. United Servs. Auto. Ass'n, supra* at 159–60.

Romanick also criticizes the *Sayan* court's analysis of public policy due to its reliance on *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 481, 687 P.2d 1139 (1984), which involved the public policy behind exclusions in homeowner's policies, as opposed to liability insurance policies. *Emerson* was cited for general principles regarding public policy and was only one of several cases the *Sayan* court cited as support for its lengthy discussion of public policy. Thus, Romanick's argument is without merit.

Romanick next criticizes *Sayan* for its application of the "standing in the shoes" doctrine. He claims this doctrine was rejected in *Safeco Ins. Co. v. Barcom,* 112 Wn.2d 575, 773 P.2d 56 (1989) and *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985).

In *Barcom,* while riding as a passenger in his son's automobile, Barcom was injured by an unidentified vehicle. Barcom and his son were each insured under their own Safeco automobile liability policy. One policy provided UIM coverage on each of Barcom's three automobiles and the other on his son's three automobiles. *Safeco Ins. Co. v. Barcom, supra* at 577. On August 1, 1986, Safeco filed a complaint for declaratory judgment against Barcom, alleging that the statute of limitations had run as to any claims Barcom might otherwise have had under the insurance policy. The trial court granted Safeco's motion for summary judgment, holding as a matter of law that the statute of limitations barred Barcom's recovery under the policy. *Safeco Ins. Co. v. Barcom, supra* at 577–78. The Court of Appeals reversed, holding that the 6–year statute of limitations applied and that it did not begin to run until there

was a breach of the contract of insurance. *Safeco Ins. Co. v. Barcom*, 49 Wn. App. 903, 746 P.2d 1226 (1987). The Supreme Court affirmed, holding that the applicable limitation period for the insureds' claims against their insurers was the 6–year limitation applicable to contracts and that the period did not begin to run until the insurers breached their obligations under the policy. *Safeco Ins. Co. v. Barcom, supra* at 582–83.

Romanick contends that the holding in *Barcom* "severely undercuts" the holding in *Sayan.* Contrary to Romanick's contention, in the *Barcom* case the Supreme Court acknowledged the difference between *Barcom* and *Sayan* in that there was no time when Sayan was legally entitled to recover from the tortfeasor; whereas in *Barcom,* there was a cause of action in existence for 3 years following the accident. *Safeco Ins. Co. v. Barcom, supra* at 581.

In *Britton,* a driver injured in an automobile accident sought a declaratory judgment establishing his insurance coverage. The driver's injury made him eligible to receive disability benefits, and the insurance policy provided that payments under the uninsured or underinsured motorist provision were to be reduced by any disability benefits received. The Supreme Court invalidated this policy provision. In doing so the court rejected the insured's argument that the disability benefits setoff clause was invalid under the collateral source rule.

> Although in uninsured motorist cases it is often said that the insurer stands in the shoes of the uninsured motorist, the insurer has, in fact, done nothing morally or legally culpable, hence is not a "wrongdoer" within this equation; furthermore, the tortfeasor who caused the insured's injury in this case would in no way benefit from the setoff. Notwithstanding its tort–oriented appearance, uninsured and underinsured motorist coverages are most appropriately characterized as 2–party contractual relationships between the insurer and the insured.

*Britton v. Safeco Ins. Co. of Am., supra* at 529.

*Britton* may be distinguished in that the insured was attempting to apply the collateral source rule, and the court rejected the "standing in the shoes" doctrine only with

regard to application of that rule. The *Britton* opinion does not otherwise invalidate the "standing in the shoes" doctrine. In particular, the opinion does not invalidate the doctrine with regard to an insured's entitlement where there exists a substantive bar to recovery.

Finally, Romanick argues that because the workers' compensation act precludes him from suing Shaffer, Shaffer is an underinsured motorist. However, an underinsured motor vehicle is defined in part as one to which the sum of liability insurance is less than the applicable damages which the covered person is "legally entitled" to recover. RCW 48.22-.030(1). Thus, again, the issue becomes the definition of "legally entitled" which *Sayan* held did not include an underinsured motorist who is immune from liability.

Accordingly, Romanick has failed to show that the *Sayan* decision should be reversed. Thus, we find that the trial court did not err in granting summary judgment for Aetna.

Judgment affirmed.

COLEMAN, C.J., and FORREST, J., concur.