[No. 78667-4. En Banc.]
Argued March 29, 2007. Decided June 7, 2007.

KEVIN SHERRY, *Respondent*, v. FINANCIAL INDEMNITY COMPANY, *Petitioner*.

612

*Debora A. Dunlap* (of *McGaughey Bridges Dunlap, PLLC*), for petitioner.

*David H. Middleton*, for respondent.

*Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 CHAMBERS, J. — This case requires us to decide two questions. First, we must decide whether the same judge who confirms an arbitration award may also resolve coverage disputes between an insured and an insurer or whether such disputes must be resolved in a separate declaratory judgment action. Second, we must decide when an insured has been "fully compensated," allowing an insurance company to reduce a judgment on an arbitration award to account for insurance benefits the insured has already received.

¶2 In this case, the insured and insurer explicitly agreed to have the same judge, who confirmed the arbitration award and reduced it to judgment, also decide whether an offset was appropriate. We conclude that these parties, under the facts of this case, orally amended their pleadings to include a prayer for declaratory relief and that the trial court had authority and jurisdiction to resolve the offset dispute. We also conclude that for purposes of offsetting previously paid personal injury protection (PIP) benefits from underinsured motorist insurance (UIM) benefits, "full compensation" does not mean the amount recoverable under UIM after a reduction for comparative fault. Instead, insureds are fully compensated when they have made a complete recovery of the actual losses suffered as a result of an automobile accident as determined by a court or arbitrator. In this case, the insured will not be fully compensated for his damages as determined by an arbitrator, and the insurance company has no right to an offset. We affirm the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

I

¶3 In April 2001, Kevin Sherry, a pedestrian, was struck by a car driven by an uninsured motorist.[1] Sherry had UIM and PIP coverage through his own insurer, Financial Indemnity Company (FIC). Under this PIP coverage, FIC paid $10,000 in medical benefits and $4,600 in lost wages soon after the accident.

¶4 Sherry and FIC were unable to agree on the proper amount of UIM benefits Sherry was entitled to and took their dispute to arbitration. The arbitrator ultimately held that Sherry had suffered damages of $143,127.92 ($53,127.92 in medical bills and $90,000.00 in general damages). In a written letter accompanying the award, the arbitrator explained that Sherry bore the "lion's share" of fault because he could have simply stepped out of the way of the oncoming car. The arbitrator found that the lion's share of fault was 70 percent and reduced Sherry's damage and award accordingly to $42,938.38.

¶5 Sherry moved to confirm the award in Pierce County Superior Court under former RCW 7.04.190 (1943).[2] FIC asked both the arbitrator and the trial judge to amend the arbitration award to reflect the PIP payments it had already made. While it is not in the record, it appears that the arbitrator declined to amend the award, perhaps believing

---

[1] Financial Indemnity Company (FIC) several times describes this accident as something like a "Johnny Knoxville jackass video attempt," referring to an MTV (music television) show where various dangerous stunts are shown. FIC strongly implies that Sherry was intentionally, rather than negligently, at fault for his own injuries. *E.g.*, Wash. State Supreme Court oral argument, *Sherry v. Fin. Indem. Co.*, No. 78667-4 (Mar. 29, 2007), *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. However, the arbitrator found that Sherry was only 70 percent at fault and did not find that Sherry acted intentionally. FIC's policy excludes PIP coverage if the insured acts intentionally, and of course UIM benefits would not be available. Because FIC does not argue its intentional act exclusions, and because there is no finding in the arbitrator's award that Sherry acted intentionally, we do not consider the implication that Sherry acted intentionally. We also decline to consider facts recited in the briefs but not supported by the record. *Cf.* RAP 10.3(a)(5), 13.4(c).

[2] The 2005 legislature repealed Washington's former uniform arbitration act, ch. 7.04 RCW, and replaced it with a revised uniform arbitration act, ch. 7.04A RCW. *See* LAWS OF 2005, ch. 433, §§ 1-32, 50.

the question was outside of the scope of the issues arbitrated or that under existing case law, the trial court should decide any offset. Both FIC and Sherry explicitly waived any objection to the trial court's deciding the offset issue during the confirmation action. The parties also agreed that any offset was contingent on FIC's paying a share of Sherry's attorney fees.

¶6 The trial court acknowledged that the letter of the law seemed to contemplate a separate declaratory judgment action to determine any offset. *See Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 502, 946 P.2d 388 (1997). The judge then concluded the parties waived any objection to his deciding the issue and gave FIC a full offset for previously paid PIP benefits, less a pro rata portion of Sherry's attorney fees expended in acquiring the UIM award. Judgment was entered in favor of Sherry for $34,792.38.[3]

¶7 Sherry appealed. The Court of Appeals ruled that by agreeing to have the trial judge decide the coverage issues, the parties had effectively joined a declaratory judgment action to the action to confirm the award. The court below also held that insurance companies are entitled to take a PIP offset only when insureds are fully compensated for their *actual* damages, not merely their UIM damages, which may be reduced by the insureds' share of fault.[4] Since, the court concluded, Sherry had not been fully compensated, FIC was not entitled to an offset. We accepted FIC's petition for review. *Sherry v. Fin. Indem. Co.*, 158 Wn.2d 1025, 2007 Wash. LEXIS 11.

---

[3]

| | |
|---|---|
| Damage award | $42,938.38 |
| Plus UIM attorneys fees + | $6,344.00 |
| Plus filing fee | + $110.00 |
| Less PIP payments | - $14,600.00 |
| Entered award | $34,792.38 |

*See* Verbatim Report of Proceedings at 14; Clerk's Papers at 95.

[4] Sherry had also argued that his insurer was entitled to reimbursement only of PIP payments reduced by his share of fault.

## II

■ ¶8 Only questions of law are presented. Our review is de novo. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 670, 72 P.3d 151 (2003).

## III

■ ¶9 We must first decide whether the trial judge improperly considered both the petition to confirm and reduce the arbitration award to judgment and the insurance company's request for an offset in one action. In *Price*, we held that the confirmation and reduction to judgment of an arbitration award was a special proceeding under former chapter 7.04 RCW, not a proceeding under the trial court's general jurisdictional powers. We concluded that the court did not have authority to consider an offset during an action to confirm an arbitration award and instructed parties to resolve questions outside the scope of arbitration either by negotiation or in a declaratory judgment action. *Price*, 133 Wn.2d at 502.

¶10 In *Price*, we were considering a case where, under *only* the trial court's power to confirm an arbitration award, the parties asked the court to decide legal issues. *Id.* at 500. *Price* never questioned, and in fact explicitly affirmed, that superior courts in Washington have the jurisdiction and power to decide coverage issues. *Id.* at 497, 502. We simply held that these general powers were outside the scope of a superior court's *statutory* power to reduce arbitration awards to judgment. *Id.* at 497, 502. Whether, in one proceeding, a trial court could act pursuant both to its general jurisdiction powers and its ministerial power under the arbitration act was not brought before the court that day.

¶11 For clarity, it would have been better practice for the parties before us to have pleaded a declaratory judgment action either in this cause of action or another. However, under the facts of this case where neither party objected and both parties treated the matter as if they had joined a

declaratory action to a motion to confirm an arbitration award, we agree with the Court of Appeals that the parties have effectively amended their initial pleadings under CR 15(a) to better reflect the actual nature of the case. *Cf. Munden v. Hazelrigg,* 105 Wn.2d 39, 46-47, 711 P.2d 295 (1985) (noting trial court may require amended pleadings under similar circumstances). We hold that, where the issues are properly pleaded, a single judge may exercise both the power to confirm an arbitration award and the power to decide what balance is owing after offsets are included. We affirm the Court of Appeals that the trial court had authority and jurisdiction to rule on the offset claim.

## IV

¶12 We now turn to whether FIC was entitled to offset earlier PIP payments against the arbitrator's UIM award. It is well established in Washington that insureds are not entitled to double recovery, and thus after an insured is "fully compensated for his loss," an insurer may seek an offset, subrogation, or reimbursement for PIP benefits already paid. *Thiringer v. Am. Motors Ins. Co.,* 91 Wn.2d 215, 219, 588 P.2d 191 (1978); *see also Hamm v. State Farm Mut. Auto. Ins. Co.,* 151 Wn.2d 303, 309, 88 P.3d 395 (2004); *Safeco Ins. Co. v. Woodley,* 150 Wn.2d 765, 770, 82 P.3d 660 (2004); *Winters v. State Farm Mut. Auto. Ins. Co.,* 144 Wn.2d 869, 876, 31 P.3d 1164 (2001) ("the insured must be fully compensated before the insurer may recoup benefits paid"); *Mahler v. Szucs,* 135 Wn.2d 398, 407, 957 P.2d 632 (1998). But " '[n]o right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons to whom the insurer owes no duty.' " *Id.* at 419 (quoting *Stetina v. State Farm Mut. Auto. Ins. Co.,* 196 Neb. 441, 451, 243 N.W.2d 341, 346 (1976)). An insurer has no subrogation-like rights against its own insured unless provided for by contract. *See Barney v. Safeco Ins. Co. of Am.,* 73 Wn. App. 426, 431, 869 P.2d 1093 (1994) (citing 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSUR-

ANCE LAW AND PRACTICE § 4902.65, at 282 (1981)), *overruled in part on other grounds by Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 946 P.2d 388 (1997); *see also Mahler*, 135 Wn.2d at 419 (quoting *Stetina*, 243 N.W.2d at 346); *Frontier Ford, Inc. v. Carabba*, 50 Wn. App. 210, 212, 747 P.2d 1099 (1987) (citing *Pendlebury v. W. Cas. & Sur. Co.*, 89 Idaho 456, 406 P.2d 129 (1965)). Nor does an insurer have a right of offset, setoff, or reimbursement without an authorizing contract provision. *See Barney*, 73 Wn. App. at 431-32 (citing 8A APPLEMAN & APPLEMAN, *supra*, §§ 4902.65, 5128.75; 12A GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW § 45:652 (Mark S. Rhodes & Ronald A. Anderson eds., 2d rev. ed. 1981)). Thus, there is a two step approach. An insurer is entitled to an offset, setoff, or reimbursement when both (1) the contract itself authorizes it and (2) the insured is fully compensated by the relevant "applicable measure of damages." *Barney*, 73 Wn. App. at 429-31.

¶13 Turning briefly to the contract, it allows for an offset. It provides: "[t]o determine the amounts payable to an insured person under [the UIM] coverage part, we will first credit against *the insured person's damages* . . . [a]ny amounts paid under other Parts of this policy." Clerk's Papers at 20 (emphasis added).[5] Thus, we move to the second step: if Sherry is fully compensated, then FIC is entitled to an offset for the PIP payments it paid previously. *Hamm*, 151 Wn.2d at 309. We must determine, under the facts of this case, whether Sherry has been "fully compensated."

¶14 Sherry argues that "full compensation" within the meaning of the rule announced in *Thiringer* means the insured has made a complete recovery of the actual losses he or she suffered as a result of an automobile accident. FIC argues that an insured receives "full compensation" by receiving the amount to which he or she is legally entitled

---

[5] Such clauses are enforceable only to the extent that they prevent double recovery of damages, regardless of policy limits. *See Keenan v. Indus. Indem. Ins. Co. of the Nw.*, 108 Wn.2d 314, 318, 738 P.2d 270 (1987) (citing *Taxter v. Safeco Ins. Co. of Am.*, 44 Wn. App. 121, 131, 721 P.2d 972 (1986)).

under UIM coverage, which may include a reduction for the insured's comparative fault.

¶15 Our approach must recognize that UIM and PIP insurance are both creatures of public policy: coverages that every insurer writing automobile policies within the state must, by law, offer their insureds. Our jurisprudence in this field is based largely on public policy and, where subrogation-like concepts are involved, equitable principles. *Cf. Thiringer,* 91 Wn.2d at 220. Many policy provisions have been found by this court to be void as violative of public policy. *See, e.g., Godfrey v. Hartford Cas. Ins. Co.,* 142 Wn.2d 885, 898, 16 P.3d 617 (2001); *Kyrkos v. State Farm Mut. Auto. Ins. Co.,* 121 Wn.2d 669, 675, 852 P.2d 1078 (1993); *Brown v. Snohomish County Physicians Corp.,* 120 Wn.2d 747, 845 P.2d 334 (1993); *Mut. of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 210, 643 P.2d 441 (1982). Because different policies are implicated, and because the legislature has mandated automobile UIM and PIP coverage be offered, exclusions that are valid in other forms of insurance may be void and unenforceable in automobile coverage. For example, a family exclusion was found to be void in an automobile policy but enforceable in a homeowner's policy. *Compare Wiscomb,* 97 Wn.2d at 207 *with State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 483, 687 P.2d 1139 (1984). A useful discussion of the public policy considerations appears in *Brown.*[6] *See Brown,* 120 Wn.2d at 753-58 (citing Robert F. Brachtenbach, *Public Policy in Judicial Decisions,* 21 GONZ. LAW REV. 1 (1985-86)).

¶16 Generally "while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tortfeasor responsible for the damage, it can recover only the excess which the insured has received . . . after the insured is fully compensated for his loss." *Thiringer,* 91 Wn.2d at 219 (citing *St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co.,* 19 N.C. App. 302, 198 S.E.2d 482 (1973)). Washington State has long favored

---

[6] This court was unanimous, though Justice Andersen concurred in result only.

full compensation for those injured in automobile accidents. "This rule embodies a policy deemed socially desirable in this state, in that it fosters the adequate indemnification of innocent automobile accident victims." *Thiringer*, 91 Wn.2d at 220 (citing *Cammel v. State Farm Mut. Auto. Ins. Co.*, 86 Wn.2d 264, 543 P.2d 634 (1975)).

¶17 In *Thiringer*, this court spoke of a policy favoring "the adequate indemnification of *innocent* automobile accident victims." *Thiringer*, 91 Wn.2d at 220 (emphasis added). This language has been often invoked since. *See, e.g., Mahler*, 135 Wn.2d at 417; *Brown*, 120 Wn.2d at 755; *Leader Nat'l Ins. Co. v. Torres*, 113 Wn.2d 366, 373, 779 P.2d 722 (1989). FIC focuses on the fact that *Thiringer* used the word "innocent." FIC equates "innocent" with "fault free" and suggests that the policy of our State is to provide adequate indemnification only to those who lack fault. But even the innocent may be negligent,[7] and this court has never limited full recovery under an insurance policy to the utterly nonnegligent. While we have not had occasion to clarify the meaning of full compensation, in this specific context, we find little in our case law, our statutory law, or the policies underlying both to support FIC's argument that full compensation is satisfied when an insured receives only the amount the insured is entitled to recover under UIM benefits instead of the actual damages incurred.

¶18 This court has never limited full recovery to the amount recoverable under UIM coverage. Rather, our opinions suggest insureds are not fully compensated until they have recovered all of their damages as a result of a motor vehicle accident. *See, e.g., Thiringer*, 91 Wn.2d at 219; *see also Hamm*, 151 Wn.2d at 309; *Woodley*, 150 Wn.2d at 770; *Winters*, 144 Wn.2d at 876; *Mahler*, 135 Wn.2d at 407. Double recovery, a prerequisite for the insurer's offset rights, cannot occur unless an insured has first been fully

---

[7] We do not find support in our jurisprudence that only the fault free should benefit from insurance. Much insurance is intended to insure against the negligent acts of the insured. Innocent, in the context of insurance, often refers to "clean hands." Generally, one who intentionally causes harm is not innocent.

compensated for the loss. For example, in *Thiringer*, the PIP insurer asserted that a settlement should be first allocated to the special damages already paid under PIP coverage. *Thiringer*, 91 Wn.2d at 217. This court approved the trial court's conclusion that to determine if the insured was fully compensated (and thus whether the specter of double recovery hovered over the case):

> the proceeds of the settlement should be applied first toward the payment of the insured's general damages and then, if any excess remained, toward the payment of his special damages covered by the PIP provision. The principle upon which this holding was based was that the insured was entitled to be made whole, and that only after he had made a full recovery for his damages did the insurer's right of subrogation arise.

*Id.* at 218. We rejected the insurance company's narrow approach and adopted a broad view of full compensation.

¶19 Adopting the approach urged by FIC would result in a very narrow view of what damages must be recovered before duplication occurs, and one that is not consistent with the general policy that insureds receive full compensation before an insurer can seek reimbursement. It is important to remember that UIM is unique among insurance. Its purpose and focus are very narrow. Rather than full compensation, UIM coverage simply provides additional insurance to cover any judgment that might be entered in favor of the insured against an underinsured motorist. *Brown*, 120 Wn.2d at 757. Therefore, for example, insureds may not recover UIM damages when their injuries were caused by an immune uninsured motorist. *See Sayan v. United Servs. Auto. Ass'n*, 43 Wn. App. 148, 156-57, 716 P.2d 895 (1986) (no UIM coverage when tortfeasor immune under federal law). Or, where an insured is not fault free, and joint and several liability is not available, the insured would not be able to recover the portion of liability assigned to an insolvent party who is not an uninsured motorist. *Cf. Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 296-99, 840 P.2d 860 (1992). UIM insurance simply insures a driver

against someone else not having enough insurance to pay a judgment, rather than insuring for full compensation in the case of an accident.

¶20 This court examined UIM coverage in the context of a double recovery in *Brown*, 120 Wn.2d 747. The defendant in that case, Snohomish County Physicians Corporation (SCPC), was a health insurance provider whose policies excluded health insurance benefits " 'to the extent benefits are available' " from any automobile insurance coverage. *Id.* at 750 (quoting the policy). Brown, the plaintiff, was injured by an underinsured motorist while riding a bicycle. SCPC informed Brown that it would pay medical expenses only after the first $70,000 had been paid by auto insurers. *Id.* This court was not confronted with a subrogation, reimbursement, setoff, or offset provision; instead, we dealt with a medical insurance exclusion, but the principle is the same. SCPC argued that its exclusion did not violate public policy because the insured would be fully compensated and would receive all he was entitled to under the contract. We disagreed and concluded that SCPC's exclusion was void because it violated public policy:

> The court has also said that the purpose of UIM coverage is to provide the insured with a second layer of protection which "floats" on the top of recovery from other sources. The second layer of protection is not without limits. As the majority in *Tissell* noted, the UIM statute provides a "second floating layer of protection in every case in which the insured is 'legally entitled to recover' damages from the negligent tortfeasor."

*Id.* at 757 (citing and quoting *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990); *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 120, 795 P.2d 126 (1990) (Callow, C.J., concurring); *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 549, 707 P.2d 1319 (1985)); RCW 48.22.030. Again, this court implicitly rejected a narrow interpretation of full compensation. While UIM coverage is limited to what an insured is legally entitled to recover, it floats on top of and is not a substitute for other insurance and benefits such as health insurance.

¶21 FIC also confuses the different purposes of fault-based insurance and coverages that are not based upon fault. Both UIM and PIP coverage are optional in Washington State, though for more than 20 years, our legislature has required automobile insurers to offer both to their policy holders. RCW 48.22.030 (UIM), .085 (PIP); *see also* LAWS OF 1993, ch. 242. Unlike UIM, PIP benefits are not fault based. In fact, in some other states, PIP-like benefits are referred to as "no fault" insurance. *See generally* ROBERT H. JERRY, UNDERSTANDING INSURANCE LAW § 134, at 661 (1987); Michael Flynn & John Smith, *Florida's No-Fault Law: To Set-off or Not to Set-Off, That Is the Question*, 30 NOVA L. REV. 109, 110 (2005). Generally speaking, people purchase PIP coverage to cover the immediate costs of an accident, such as medical expenses and loss of income; people purchase UIM coverage against the very real possibility that they will be injured by a motorist who has insufficient insurance to pay a judgment. RCW 48.22.030 (UIM), .085 (PIP). As the Court of Appeals observed, and as FIC properly conceded at oral argument, even if Sherry were 100 percent negligent and the sole cause of the accident, FIC would still have to pay Sherry the full PIP policy limits. *Sherry v. Fin. Indem. Co.*, 132 Wn. App. 355, 366, 131 P.3d 922 (2006). It follows from FIC's argument that, if the arbitrator had found Sherry's damages were $10,000 medical and $10,000 general for a total of $20,000, and he was 50 percent negligent he would be entitled to $10,000 in UIM benefits.[8] If FIC had paid Sherry $10,000 in PIP benefits, it would be entitled to offset that $10,000 against the UIM award, and Sherry would effectively receive nothing under his PIP coverage; coverage for which he paid a separate premium. Such a result would be inconsistent with the legislative scheme and our declaration in *Brown* that UIM

---

[8] Under FIC's approach, taken to its logical extreme, the insured in *Sayan* might be required to reimburse the insurance company for PIP payments to prevent a "double recovery" of the UIM benefits of nothing. However, that would fly in the face of the general policy of PIP insurance, which is to provide immediate funds regardless of fault. *See generally* RCW 48.22.085. Counsel for FIC during oral argument did reject the suggestion that FIC would pursue reimbursement of PIP payments under those facts.

coverage is a floating layer above all other "sources." *Brown,* 120 Wn.2d at 757.[9]

¶22 Additionally, as we said in *Winters* and again in *Hamm,* where an insurer has written two separate auto insurance coverages and received two separate premiums for those separate coverages, the insured should not be worse off simply because both were purchased from the same insurer. *Hamm,* 151 Wn.2d at 312; *Winters,* 144 Wn.2d at 882. While FIC's UIM coverage is fault based, the Court of Appeals is quite correct in implying that its PIP medical and wage loss payments are not. *Cf. Sherry,* 132 Wn. App. at 364. FIC reasons that Sherry is fully compensated if he receives 30 percent of his damages, essentially equating full compensation with the damages that would be available under its UIM provisions. But by offsetting its PIP medical payments, the insurance company essentially seeks to reduce Sherry's medical insurance because of his own fault. If Sherry had purchased medical insurance from another insurance carrier, there would be no reduction for fault; thus, under FIC's argument, Sherry is worse off for having purchased both insurance coverages from FIC.[10]

¶23 We hold that an insurer is entitled to reduce an UIM arbitration award by previously paid PIP benefits only when its insureds are fully compensated for their actual damages, without reduction to account for the insureds' fault.

---

[9] FIC argues that *Tolson* is inconsistent with the opinion of the court below. *Tolson v. Allstate Ins. Co.,* 108 Wn. App. 495, 499, 32 P.3d 289 (2001). We disagree. In *Tolson,* the Court of Appeals remanded because the arbitrator's award was inconsistent on its face. *Id.* at 499. The Court of Appeals declined to address the merits of the insured's argument that an offset was not appropriate unless he was fully compensated and since he had not shown he was, he was *not* fully compensated. *Id.* at 500. Tolson was a passenger in a vehicle; nothing in *Tolson* suggests the insured was found partially at fault.

[10] FIC's counsel conceded in oral argument that under its interpretation, its insured would, under these circumstances, be worse off by buying PIP coverage from FIC instead of medical and disability coverage from another insurer.

## V

¶24 A petition to confirm an arbitration award and reduce it to judgment is heard at a special proceeding under chapter 7.04 RCW. A judge does not have authority in such a proceeding to resolve coverage disputes, and coverage disputes are appropriately resolved by negotiation or in separate or joined declaratory judgment action. We hold under the facts of this case, the Court of Appeals correctly concluded the parties effectively amended their pleadings pursuant to CR 15(a) to include a prayer for declaratory relief. We further hold that for purposes of offsetting PIP benefits from UIM benefits, "full compensation" within the meaning of the *Thiringer* rule contemplates that the insured has made a complete recovery of the actual losses suffered as a result of an automobile accident without regard to fault. In this case, the insured did not receive full compensation for his damages. We affirm the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, SANDERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ.; and BROWN, J. PRO TEM., concur.