237 N.J. Super. 460 (1990)
568 A.2d 127
LAUREN KOUGH, PLAINTIFF-APPELLANT,
v.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1989.
Decided January 3, 1990.
*461 Before Judges PETRELLA, O'BRIEN and STERN.
Daniel P. Simpson argued the cause for appellant (Hirsch, Newman, Simpson & Baer, attorneys; Daniel P. Simpson and Nancy J. Platkin, on the brief).
Jeffrey E. Gorrin argued the cause for respondent (Gorrin, Gorrin & McFadden, attorneys; (Caryn S. Granofsky, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The novel issue in this case is whether a passenger injured by the negligence of an uninsured driver can recover uninsured motorist (UM) benefits where the driver is a fellow employee and the passenger receives workers' compensation benefits. Defendant, New Jersey Automobile Full Insurance Underwriting Association (JUA), declined coverage, reasoning that UM benefits were payable only when the insured is "legally entitled to recover" from the owner or operator of an uninsured motor vehicle. It considered plaintiff's receipt of workers' compensation benefits as confirmation that she was not "legally entitled to recover" from her coemployee, and it thus followed that plaintiff was not entitled to UM benefits. The motion judge granted defendant's motion for judgment, concluding that a finding of coverage would put plaintiff in a better position than she would have been in if her coemployee had been fully insured.
On November 9, 1988 plaintiff filed a verified complaint against Selective Insurance Company of America (Selective), in which she sought to compel defendant Selective to arbitrate her claim to UM benefits[1] and obtained an order to show cause why she should not be granted that relief. Selective filed an answer alleging various defenses, including an assertion that *462 plaintiff's claim was "barred by the exclusive remedy provision of the Workers' Compensation Act."
On the return day on the order to show cause, the judge pointed out that plaintiff had named the wrong defendant and the case could not proceed unless the "JUA" was named as a defendant. An order was entered December 8, 1988 denying without prejudice plaintiff's application to compel arbitration and authorizing an amendment to the complaint to name JUA as defendant.
At argument of plaintiff's subsequent motion for reconsideration it was made known that defendant had filed a declaratory judgment action requesting resolution of the same legal issue presented by plaintiff's complaint. The record does not contain a copy of that complaint, but the judge indicated he would decide the entire case. He concluded that plaintiff was not entitled to arbitration because her receipt of workers' compensation benefits precluded an action under her uninsured motorist endorsement. Judgment dismissing the complaint was entered on January 18, 1989.
The motion judge premised his opinion on the assumption that plaintiff would have no right of recovery if the driver Andrea Fefferman were insured, and she should not have greater rights because Fefferman was uninsured. He said:
Now, in regard to this the plaintiff is receiving, this being the decision of the Court, the plaintiff is receiving the exact same recovery she would have received if the Fefferman vehicle was insured. Plaintiff seeks here to have her recover over and above that which she would have received if Fefferman was insured. If Fefferman had an insurance policy, any law suit instituted by plaintiff against Fefferman would be dismissed at the appropriate time by reason of the co-employee doctrine that exists both in New York and New Jersey. The purpose of uninsured motorists coverage is not to provide additional coverage to insured parties, but rather to provide them the same recovery up to the limits of their policy that they would have received if the negligent parties were insured. To permit this matter to proceed to arbitration would be to acknowledge the right of plaintiff to receive more monies under UM coverage than she would receive if the wrongful party, that is, Fefferman was insured. Plaintiff will receive her benefits under Worker's Compensation as the exclusive remedy against Fefferman. She also has the right to proceed against the other driver and any other parties involved in this matter. And if *463 any of the other parties are negligent, she would receive the full amount of her trial award subject to the limits of the other parties' policies or plaintiff's uninsured motorists coverage, whichever is greater.
On plaintiff's appeal the only issue is whether the exclusive remedy provision of the workers' compensation scheme precludes her recovery of uninsured motorist benefits.
The relevant facts are not in dispute. Plaintiff, born November 17, 1968, resides with her parents and is insured under an automobile insurance policy which provides uninsured motorist coverage as required by statute. That policy states, in pertinent part, that the insurer "will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle."
Plaintiff, a passenger in a vehicle being operated by Fefferman was injured on January 14, 1988 in an accident in Secaucus, New Jersey. Fefferman, a New York resident, was uninsured at the time because her policy had been cancelled due to nonpayment of the premium due. Their New York employer had some automobile coverage, but it did not provide benefits to Kough for the accident in question.
Kough was eligible for, and in fact received $85,000 in benefits, under New York's Workers' Compensation Law. She also filed a separate law suit, which apparently remains unresolved, against other potentially culpable parties, including the driver of the other vehicle.
According to Kough, the judge erred in concluding that she was not entitled to UM benefits. She frames the issue as whether the "Legislature intended for the defendant to benefit from the exclusive remedy provision of workers' compensation at plaintiff's expense." Kough argues that allowing recovery would be consistent with New Jersey's policy to protect automobile accident victims to the fullest extent possible. She stresses the first-party nature of UM coverage and contends that under the insurance policy defendant promised to compensate her for the losses she sustained as a result of an accident involving an uninsured vehicle.
*464 JUA relies on the language of the insurance contract which it asserts bars recovery. Under that language it promised to pay damages only when an insured is "legally entitled to recover" from the owner or operator of an uninsured motor vehicle. Since Fefferman was a coemployee and plaintiff was entitled to workers' compensation benefits as a result of the accident, it asserts that plaintiff was never legally entitled to recover damages from Fefferman and, therefore, cannot collect UM benefits. Defendant reasons that the statute mandating UM coverage was "not intended to put a claimant in a better position than he would be in had the tortfeasor been insured."
N.J.S.A. 17:28-1.1 mandates UM coverage. The policy in question complies with the statutorily required coverage. Automobile policies issued in this State, as mandated by N.J.S.A. 17:28-1.1a, must provide coverage "for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or an owner of an uninsured motor vehicle...."
As a result of our Workers' Compensation law a person injured in a motor vehicle accident is not legally entitled to recover damages from a negligent coemployee if the injuries are compensable under that statutory framework. N.J.S.A. 34:15-8; Barone v. Harra, 77 N.J. 276, 279 (1978). In this case the parties agree that the relevant rule in New York is the same. "The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee ... when such employee is injured ... by the negligence or wrong of another in the same employ." N.Y. Work. Comp. Law, § 29(6) (McKinney 1989).
The issue involving potential entitlement to UM benefits where workers' compensation is involved is novel in New Jersey, although several jurisdictions have addressed it. The majority of jurisdictions which have ruled on the issue hold that the exclusive remedy of workers' compensation precludes recovery *465 of UM benefits when the insured is injured by a coemployee. Allstate Ins. Co. v. Boynton, 486 So.2d 552 (Fla. 1986), rev'ing 443 So.2d 427 (Dist.Ct.App. 1984); Mayfield v. Casualty Reciprocal Exchange, 442 So.2d 894 (La. Ct. App. 1983), writ den., 445 So.2d 1230 (La. 1984); Gray v. Margot Inc., 408 So.2d 436 (La. Ct. App. 1981); Carlisle v. State Dept. of Transportation and Development, 400 So.2d 284 (La. Ct. App. 1981), Writ Den., 404 So.2d 1256 (La. 1981); Hopkins v. Auto-Owners Ins. Co., 41 Mich. App. 635, 200 N.W.2d 784 (1972); Perkins v. Insurance Co. of North America, 799 F.2d 955 (5 Cir.1986) (construing Mississippi law); Hubbel v. Western Fire Ins. Co., 218 Mont. 21, 706 P.2d 111 (1985); Aetna Cas. & Sur. Co. v. Dodson, 235 Va. 346, 367 S.E.2d 505 (1988);[2] See Peterson v. Kludt, 317 N.W.2d 43 (Minn. 1982). Only one case has held to the contrary, Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987), and plaintiff relies on its reasoning.
Cases addressing whether a serviceman is entitled to UM benefits when struck by an uninsured federal employee[3] are closely related to the issue, but are controlled by federal law which precludes an injured serviceman from bringing a negligence action against another government employee. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The State of Washington has held that the insurer prevails because the injured insured is not "legally entitled to recover damages," the prerequisite for recovery of UM benefits. Sayan v. United Services Auto. Ass'n, 43 Wash. App. 148, 716 P.2d 895 (1986). Alabama reached the opposite result on the same facts. State Farm Auto. Ins. Co. v. Baldwin, 470 So.2d 1230 *466 (Ala. 1985).[4]
Barfield, supra is the one case our research disclosed to date which allowed recovery of UM benefits under comparable facts. There the majority held (by a 5-4 vote), emphasizing the contractual nature of the insurer's obligation, that the phrase "legally entitled to recover" means only that the insured suffered damages through the fault of an uninsured motorist. 742 P.2d at 1112. The majority concluded that the phrase "does not mean that an insured must be able to proceed against an uninsured/underinsured in tort in order to collect uninsured motorist benefits." Ibid. The dissenters in Barfield took the position that the insurance contract itself conditioned the insured's recovery upon the legal liability of another. The dissent said: "The insurer's liability is gauged by that of another  the uninsured/underinsured tortfeasor," and thus the insured must show that the uninsured motorist "bears liability for the harmful event." 742 P.2d at 1113.
One of the injured serviceman cases applied a similar rationale: "legally entitled to recover" requires the insured to prove nothing more than fault and damages. Baldwin, supra, 470 So.2d at 1233. Baldwin acknowledged that the insurer was "technically correct" in insisting that the insured was never legally entitled to recover damages from the negligent, uninsured fellow governmental employee, yet it found a legislative intent to allow UM benefits where the injured insured would otherwise be without recovery. Id. at 1234.
Two rationales are generally relied on in cases holding in favor of the insurer. The first is that the express language of the policy (and usually the statute) requires that the insured be legally entitled to recover damages. Such coverage is considered "contingent upon there being liability" by an uninsured *467 motorist. Carlisle, supra, 400 So.2d at 287. Since a coemployee cannot be liable, neither can the insurer. Ibid., accord, Boynton, supra, 486 So.2d at 557 ("the carrier pays only if the tort feasor would have to pay, if the claim were made directly against the tortfeasor"); Dodson, supra, 367 S.E.2d at 508 (UM coverage requires that the "insured have a legally enforceable right to recover damages from an owner or operator of an uninsured motor vehicle").
The second and better rationale emphasizes the intention of the Legislature since most of the jurisdictions that have addressed the issue mandate UM coverage by statute. For example, in tracing the history of financial responsibility statutes, the Sayan court noted that UM coverage was intended to fill a "gap" to compensate innocent automobile accident victims injured by drivers who violated the statutory requirement of carrying liability coverage. Sayan, supra, 716 P.2d at 899. With regard to whether the innocent victim should have a more effective remedy against his UM carrier than he would have against the negligent driver himself, who for some reason was immune from tort liability, the court concluded, after considering the statute:
We see no evidence that the Legislature intended for the victim of an uninsured motorist to receive compensation that he could not obtain even were the negligent driver in compliance with the financial responsibility statutes. Id. at 900.
Accord, Hopkins, supra, 200 N.W.2d at 786 (purpose of UM legislation "is to place the victim of an uninsured motorist in the same position he would have occupied had the tortfeasor been insured"). As the Perkins court stated:
We also note that to hold INA liable in this instance would create the anomaly that Perkins would be better off with the driver uninsured than if the driver had carried an adequate personal liability insurance policy providing coverage for the driver's liability. If the driver had such a personal policy, then there could be no uninsured motorist claim by Perkins because the driver would be insured. However, in a suit against the driver, Perkins would not be able to preclude the operation of the exclusive remedy clause of Mississippi's Worker's Compensation Statute because the driver could assert his co-employee immunity. [Citation omitted]. Thus Perkins, under his argument, achieves a greater overall recovery than he would if the driver were adequately insured. We *468 doubt that the uninsured motorist statute was intended to produce such a result. [Perkins, supra, 799 F.2d at 959].
A third concern gleaned from some cases has been the availability of some compensation. Baldwin, supra, the Alabama serviceman's case, found coverage at least in part because it detected a legislative intent to provide some source of recompense for the victim of an uninsured motorist. 470 So.2d at 1233. However, where the victim can obtain some redress through workers' compensation benefits that problem is not present. This point was emphasized by the Perkins court:
In these cases involving tort immunities, there exists a situation where there may be no compensation whatever from any source (including Worker's Compensation) for injuries incurred in an accident, and as the Baldwin court held, this result runs counter to the theme of providing coverage which underlies uninsured motorist statutes. Id. at 1234. Here, on the other hand, there is recovery under Worker's Compensation for this particular injury and the result is not a complete bar to any recovery by a claimant for his injuries. [Perkins, supra, 799 F.2d at 961].
This reasoning was relied on by the Florida Supreme Court which denied benefits under the UM coverage in such a situation.
In Florida a source of indemnification for a worker injured by a co-worker driving an uninsured vehicle is already available, i.e. the benefits of the Worker's Compensation Law. Society's goal of protecting the worker under this circumstance has been achieved. We do not need to torture the meaning of a statute aimed at curing another ill entirely to provide a remedy where one has already been provided. [Boynton, supra, 486 So.2d at 559].
Case law interpreting New Jersey's Workers' Compensation and Uninsured Motorist statutes leads us to conclude that the reasoning of the cases under the majority view on this issue is more persuasive. The reasoning in our case law seems to reject a contractual analysis for UM coverage such as emphasized by the majority of the Oklahoma Supreme Court in Barfield. Our Supreme Court has characterized uninsured motorist insurance as a "contractual substitute for a tort action against an uninsured motorist." Midland Ins. Co. v. Colatrella, 102 N.J. 612, 617 (1986). Simply stated, "an uninsured motorist claim is a statutory cause of action which has many characteristics of a tort action." Ross v. Transport of New *469 Jersey, 114 N.J. 132, 145 (1989). UM coverage has been described as "compensation for the uninsured driver's common law liability." Montedoro v. Asbury Park, 174 N.J. Super. 305, 308 (App.Div. 1980). "The insured's legal entitlement to damages for the uninsured driver's negligence imports into the UM policy all of the normal rules governing tort liability and damages." Id. at 308-309. Accord, Ross, supra, 114 N.J. at 144-145.
Under normal rules of liability plaintiff cannot recover here. Because Fefferman was a coemployee, plaintiff could not "prove an automobile liability case against the uninsured," a prerequisite for recovery. Riccio v. Prudential Property & Cas. Ins. Co., 108 N.J. 493, 499 (1987). In other words, because of the workers' compensation bar, plaintiff is not "legally entitled to recover damages" from her coemployee.
Moreover, allowing plaintiff to recover UM benefits here would create the anomalous situation of giving her greater benefits than if Fefferman had been fully insured. The Legislature mandated UM coverage in all automobile policies to fill a gap in the overall plan to insure that innocent victims of automobile accidents had some source of recovery. Riccio, supra, 108 N.J. at 498-499. The statute "was designed to provide maximum remedial protection to the innocent victims of financially irresponsible motorists and to reduce the drain on the financially-troubled Unsatisfied Claim and Judgment Fund." Id. at 503-504. Kough was the victim of a "financially irresponsible" motorist, her coemployee, Fefferman, but that financial irresponsibility in itself did not cause her any loss because of the bar to suit by a coemployee. If we concluded that UM benefits were payable here, but would not be available if Fefferman had been fully insured, an anomaly would result. Thus, in Montedoro, supra, the court held that the workers' compensation carrier could assert a lien against the insured's recovery of UM benefits in large part because the court was "unable to conceive of any reason why the Legislature would have intended an employee-accident victim of an uninsured *470 driver to fare better than an employee-accident victim of an insured driver, when the legislative effort has been in the other direction." 174 N.J. Super. at 308. Accord, Colatrella, supra, 102 N.J. at 616.
In order to avoid such an anomaly, Kough would have to be able to recover UM benefits even if Fefferman were fully insured. A few judges have urged such an approach, reasoning that a coemployee operating a fully insured motor vehicle is uninsured from the viewpoint of the injured plaintiff, inasmuch as the liability policy is not available to satisfy the victim's injuries. For example, in Boynton v. Allstate Ins. Co., 443 So.2d 427, 429 (Fla. Dist. Ct. App. 1984), rev'd 486 So.2d 552 (Fla. 1986), the appeals court stated that a vehicle covered by a liability policy is nonetheless uninsured "when the policy provides no coverage for the particular loss for which damages are claimed." The dissenting opinion in Hubbel v. Western Fire Ins. Co., supra, expresses the same reasoning. 706 P.2d at 115.
Plaintiff points out that in Christy v. City of Newark, 102 N.J. 598 (1986), the injured victim received both workers' compensation benefits and UM coverage. In that case plaintiff, a Newark police officer, was injured when a hit-and-run vehicle struck a police car that he was operating in the course of his duties. He received workers' compensation benefits and UM benefits under his own automobile policy. He sought additional UM benefits from the city's insurance fund (the city was a self-insurer). 102 N.J. at 600-601. Among other things, Newark contended that it should not have to pay both workers' compensation and additional UM benefits. Id. at 608. Newark relied on N.J.S.A. 34:15-8, which prohibits an employee from suing his employer. Id. at 609. The Court found no merit in this argument because the workers' compensation bar had never been construed as precluding an injured worker from suing a third party tortfeasor. Id. at 609. In fact, N.J.S.A. 34:15-40 gives the employer or the workers' compensation carrier a lien on recovery from the tortfeasor. Id. at 609-610. *471 That workers' compensation lien also attaches to the proceeds received by the injured party under his UM coverage. Midland Ins. Co. v. Colatrella, supra, 102 N.J. at 617-618.
The obvious distinction between this case and Christy is that there the police officer was legally entitled to recover damages from the hit-and-run motorist, whereas here plaintiff is not legally entitled to recover damages from Fefferman. Christy does not support plaintiff's position.
In our view existing legislation permits an insurer to define an uninsured motor vehicle to exclude from UM coverage injuries received by an employee from an uninsured coemployee where the injuries are compensable under workers' compensation. Prior to 1983, a vehicle was not uninsured if it had liability insurance in the minimum required limits. Gorton v. Reliance Ins. Co., 77 N.J. 563, 572 (1978). In 1983 the Legislature defined an uninsured motor vehicle in N.J.S.A. 17:28-1.1e(2)[5] as follows:
(a) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident;
(b) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is bodily injury liability insurance in existence but the liability insurer denies coverage or is unable to make payment with respect to the legal liability of its insured because the insurer has become insolvent or bankrupt, or the Commissioner of Insurance has undertaken control of the insurer for the purpose of liquidation; or
(c) a hit and run motor vehicle as described in section 18 of P.L. 1952, c. 174 (C. 39:6-78).
`Uninsured motor vehicle' shall not include an underinsured motor vehicle; a motor vehicle owned by or furnished for the regular use of the named insured or any resident of the same household; a self-insurer within the meaning of any financial responsibility or similar law of the state in which the motor vehicle is registered or principally garaged; a motor vehicle which is owned by the United States or Canada, or a state, political subdivision or agency of those governments or any of the foregoing; a land motor vehicle or trailer operated on rails or crawler treads; a motor vehicle used as a residence or stationary structure and not as a vehicle; or equipment or vehicles designed for use principally off *472 public roads, except while actually upon public roads. [L. 1983, c. 362, § 1, now codified as N.J.S.A. 17:28-1.1e(2)].
It might be argued that even if Fefferman's vehicle had been fully insured, it might be deemed an uninsured motor vehicle because the liability insurance was not applicable to plaintiff at the time of the accident, or because the liability insurer denied coverage. However, this would be a strained interpretation since it would deem Fefferman's vehicle uninsured even if she had in effect a liability policy of $500,000. Moreover, such a broad interpretation of the phrase "uninsured vehicle" would still require a tortured definition of the phrase "legally entitled to recover."
Affirmed.
NOTES
[1] The complaint also demanded punitive damages.
[2] The Dodson case was decided in the context of an action brought in Federal Court; the Fourth Circuit requested and received an opinion from the Virginia Supreme Court on the issue in question. Dodson v. Aetna Cas. & Sur. Co., 851 F.2d 736 (4 Cir.1988).
[3] Cases which have addressed this issue appear in Annotation, "Uninsured Motorist-Immunity," 55 A.L.R. 4th 806 (1987).
[4] As in Dodson, supra, the Alabama Supreme Court's decision in Baldwin was in response to a request for an advisory opinion from a federal appeals court. State Farm Mut. Auto. Ins. Co. v. Baldwin, 764 F.2d 773 (11 Cir.1985).
[5] Amendments by L. 1988, c. 119, § 11, effective January 1, 1989, did not affect these subsections.