867 So.2d 320 (2001)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
Nicholas Shane CARLTON.
2991014.
Court of Civil Appeals of Alabama.
May 11, 2001.
Rehearing Denied June 22, 2001.
*321 Ronald G. Davenport and R. Austin Huffaker, Jr., of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellant.
Richard A. Lawrence, Montgomery, for appellee.
CRAWLEY, Judge.
This case requires us to decide an issue of first impression in Alabama: whether a worker can receive uninsured-motorist ("UM") benefits under his family automobile liability policy when he is injured on the job by a negligent coworker who is immune to suit because of the exclusivity provisions of the Workers' Compensation Act ("the Act").
In October 1998, Nicholas Shane Carlton was injured in a motor-vehicle accident while acting within the scope of his employment with Montgomery Landscaping Contractors, Inc. Carlton was a passenger in a vehicle owned by his employer and driven by a coemployee. The coemployee-driver negligently turned in front of an oncoming vehicle. Carlton received workers' compensation benefits. He also sought benefits under a State Farm automobile policy that provided UM coverage.
State Farm refused to pay, insisting that Carlton could not fulfill the condition precedent to recovery of UM benefitsthat he be "legally entitled to recover" from the negligent driverbecause, State Farm says, Carlton was barred by the exclusivity and coemployee-immunity provisions of the Act from suing a coemployee for negligence.
*322 See §§ 25-5-52; 25-5-53; 25-5-11, Ala.Code 1975.
State Farm filed a declaratory-judgment action, seeking a determination that it was not liable under the UM provision of an automobile policy issued to Carlton's mother and including Carlton as an insured. Before he was served in State Farm's action, Carlton sued State Farm to collect the UM benefits of his mother's policy. In State Farm's declaratory-judgment action, Carlton answered and counterclaimed for the proceeds of the policy. The two cases were consolidated and the facts were stipulated by the parties. Each party moved for a summary judgment, with a supporting brief. The circuit court entered a judgment in favor of Carlton for $50,000, the limits of his mother's UM coverage. State Farm appealed to this court.
Section 32-7-23, Ala.Code 1975, mandates that every insurer in this state offer UM coverage in its automobile liability insurance policies, "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." (Emphasis added.) The State Farm policy that insures Carlton echoes the words of the UM statute: "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." (Emphasis added.) Carlton is barred by § 25-5-11, Ala.Code 1975, from suing his negligent coworker. Therefore, State Farm argues, it does not owe Carlton any UM benefits because Carlton is not "legally entitled to recover" from the negligent coworker.
At least 19 jurisdictions have considered the issue presented here, and 17 have concluded that an injured employee has no cause of action against his own UM insurer for on-the-job injuries arising out of the negligence of a fellow employee.[1],[2]See generally *323 John P. Ludington, Annot., Automobile Uninsured Motorist Coverage: "Legally Entitled to Recover" Clause as Barring Claim Compensable Under Workers' Compensation Statute, 82 A.L.R.4th 1096 (1990). Carlton argues that a line of cases decided by our supreme court would allow the negligent coworkerprecisely because he is not amenable to suitto be deemed the operator of an "uninsured motor vehicle," and would, therefore, require State Farm to pay Carlton the UM proceeds of his mother's automobile policy. See Hogan v. State Farm Mut. Auto. Ins. Co., 730 So.2d 1157 (Ala.1998) (holding that a driver not amenable to suit because of the Guest Statute is deemed an "uninsured motorist"), overruled on other grounds by Williamson v. Indianapolis Life Ins. Co., 741 So.2d 1057 (Ala.1999); State Farm Mut. Auto. Ins. Co. v. Jeffers, 686 So.2d 248 (Ala.1996) (holding that a driver with governmental immunity is deemed an "uninsured motorist"); State Farm Auto. Ins. Co. v. Baldwin, 470 So.2d 1230 (Ala.1985) (same). All three cases Hogan, Jeffers, and Baldwinwere decided in response to certified questions from federal courts.
In Baldwin, the first of the trio of cases, a United States Army sergeant at Fort Rucker was injured when an uninsured Government vehicle, driven by an employee of the United States Government, collided with the sergeant's motorcycle. It was undisputed that the civilian's negligence caused the accident. Nevertheless, the sergeant had no recourse against the civilian or the Government because of the Feres doctrine. See Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (interpreting the Federal Tort Claims Act, 28 U.S.C. § 1346, to bar actions against the Government or its employees for injuries incurred by a member of the military arising out of and in the course of his military service).
First, the court reiterated the legislative policy underlying the UM statuteto provide coverage "to protect those financially and ethically responsible enough to obtain automobile liability insurance from injuries caused by those not so responsible." Baldwin, 470 So.2d at 1233. The court stated that the UM statute is read into every insurance policy contract and, unless the statute itself restricts coverage, an individual policy may not restrict UM coverage.
Next, the court discussed an earlier decision of this court in State Farm Mutual Automobile Insurance Co. v. Griffin, 51 Ala.App. 426, 286 So.2d 302 (1973). Griffin had held that an insured was entitled to UM benefits if he could establish fault on the part of the uninsured motorist and damage, subject to any available policy defenses the insurer might have, as well as "substantive defenses that would have been available to the uninsured motorist." Griffin, 51 Ala.App. at 431, 286 So.2d at 306.
Acknowledging that, under Griffin, State Farm could assert the Feres-doctrine defense to deny liability to its insured, the supreme court stated the issue as follows:
*324 "[T]his court must decide if the legislative policy of the uninsured motorist statute would allow State Farm to assert that defense and deny the otherwise valid claim of the Baldwins." Baldwin, 470 So.2d at 1234. The court concluded that the policy underlying the UM statuteto protect a person who is injured by a financially irresponsible motoristwould not allow the insurer to assert the defense and that the insured could recover UM benefits from State Farm.
The second case in the trio, Jeffers, also involved a driver who was immune from suit. In that case, Jeffers was injured when her vehicle collided with a vehicle being driven by a deputy sheriff. Unlike the vehicle in Baldwin, the vehicle in Jeffers was insured, but the deputy sheriff had substantive immunity. The court framed the issue as follows:
"[W]hether, under § 32-7-23(b), Ala. Code 1975, an insured motorist can be deemed to be an `uninsured motorist' when the injured party's claim against the insured motorist is barred by the doctrine of substantive immunity."
The court determined that the only material distinction between Jeffers and Baldwin was the fact that the vehicle in Jeffers was insured but the vehicle in Baldwin was uninsured.
Once again referring to the purpose underlying the UM statute, the court stated:
"`[T]he design of the statute is to protect [an] injured [person] who can prove that the accident did in fact occur and that he was injured as a proximate result of the negligence of [another] motorist who cannot respond in damages for such injuries.'"
Jeffers, 686 So.2d at 250 (quoting State Farm Fire & Cas. Co. v. Lambert, 291 Ala. 645, 649, 285 So.2d 917, 919 (1973)).
With one justice dissenting, the court held that "because of the application of substantive immunity, Deputy Anderson, in effect, was not insured." Jeffers, 686 So.2d at 250. Justice Houston dissented, pointing out that the UM statute addressed "uninsured motor vehicles," not "uninsured motorists." He stated:
"The mere fact that a vehicle insured for bodily injury liability is operated by someone who is immune from liability while operating that vehicle cannot make the vehicle an `uninsured motor vehicle.'"
Jeffers, 686 So.2d at 250 (Houston, J., dissenting).
In Hogan, the most recent of the trio of cases, an injured passenger was unable to recover against a negligent driver with whom she was traveling because the Alabama Guest Statute, § 32-1-2, Ala.Code 1975, allowed recovery only against willful or wanton drivers. Therefore, relying on Baldwin and Jeffers, the passenger sought UM benefits under her own automobile policy. The supreme court held that she was entitled to the proceeds of the policy. Also relying on Baldwin and Jeffers, the court determined that "[t]he passenger, even though she [was] precluded from suing the owner or the operator of the vehicle in which she was a passenger because of the provisions of the guest statute, may nevertheless be `legally entitled to recover damages' under the Uninsured Motorist Statute." 730 So.2d at 1159.
Justice Lyons dissented, stating that he thought the court, in Baldwin and Jeffers, had misapplied the language of the UM statute. Justice Lyons explained:
"I believe that whether an insured is `legally entitled to recover' depends entirely on the merits of the insured's claim against a tortfeasor under the laws of the state. However, today's decision, like Baldwin and Jeffers, has construed *325 the phrase to mean `legally entitled to recover but for a defense that does not arise out of any wrongful conduct of the insured,' a defense such as immunity or an insured's status as a guest."

Hogan v. State Farm Mut. Auto. Ins. Co., 730 So.2d at 1159 (Lyons, J., dissenting). Justice Lyons's dissent then predicted the factual scenario we have before us now:
"Under the majority's expansive rationale, an employee/passenger in a company-owned automobile who is precluded, by § 25-5-11, Ala.Code 1975, from recovering against a fellow employee/driver for negligence or wanton misconduct would be entitled to payment under his or her uninsured motorist coverage."
730 So.2d at 1159-60 (Lyons, J., dissenting).
This court is bound by the decisions of the Alabama Supreme Court, see § 12-3-16, Ala.Code 1975, and we have no authority to overrule that court's decisions. The first issue we must decide, therefore, is whether Justice Lyons was correct in his Hogan dissent: is the result in this case dictated by the Baldwin-Jeffers-Hogan line of authority? If not, then on what grounds are Baldwin, Jeffers, and Hogan distinguishable?
State Farm contends that the result here is not dictated by those three cases. It argues that this case is distinguishable from Baldwin, Jeffers, and Hogan on two grounds. First, State Farm claims that Carlton's right to sue his own insurer for UM benefits is preempted by the exclusive-remedy provisions of §§ 25-5-52 and 25-5-53. Section 25-5-52 provides:
"Except as provided in this chapter, no employee of any employer subject to this chapter, nor the personal representative, surviving spouse, or next of kin of the employee shall have a right to any other method, form, or amount of compensation or damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof."
Section 25-5-53 provides:
"The rights and remedies granted in this chapter to an employee shall exclude all other rights and remedies of the employee, his or her personal representative, parent, dependent or next of kin, at common law, by statute, or otherwise on account of injury, loss of services, or death. Except as provided in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or disease originates in the employment. In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to the workers' compensation insurance carrier of the employer; to a person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer; to an officer, director, agent or employee of the carrier, person, firm, association, trust, fund, or corporation; to a labor union, an official, or representative thereof; to a governmental agency providing occupational safety and health services, or an employee of the agency; and to an officer, director, agent, or employee of the same employer, or his or her personal representative. Nothing in this section shall be construed to relieve a person from criminal *326 prosecution for failure or neglect to perform a duty imposed by law.
"For the purpose of this section, a carrier, person, firm, association, trust, fund, or corporation shall include a company or a governmental agency making a safety inspection on behalf of a self-insured employer or its employees and an officer, director, agent, or employee of the company or a governmental agency."
(Emphasis added.)
The exclusivity provisions of the Act do not furnish a way to distinguish this case from Baldwin, Jeffers, and Hogan because Carlton's action against State Farm is not affected by those provisions. Sections 25-5-52 and 25-5-53 state the exclusive remedy for an injured worker as against his employer, his coemployees, the compensation insurance carrier, and the compensation service companies of the employer. See A. Larson & L. Larson, Larson's Workers' Compensation Law, § 100.01 at 100-2 (2000) ("[o]nce a workers' compensation act has become applicable ..., it affords the exclusive remedy for the injury by the employee or the employee's dependents against the employer and insurance carrier"). (Emphasis added.)
Although § 25-5-52 and the first sentence of § 25-5-53 could be argued to imply that the Act provides an injured employee's sole remedy against the world at large, the history and purpose of the Act indicate that those two statutes provide an injured employee's sole remedy only against his employer and those entities identified with his employer. The bargain struck in the creation of the workers' compensation system, or the quid pro quo for the Act, is based on the fact that
"the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, it is relieved of the prospect of large [damages] verdicts."
Larson, Id. § 100.1 at 100-3. See also Reed v. Brunson, 527 So.2d 102, 107 (Ala. 1988). In Reed, our supreme court reviewed the history of the Act, specifically the development of its coemployee-immunity provisions. The court stated:
"[The first Alabama Workmens' Compensation Act] took effect on January 1, 1920. Act 245, Acts of Alabama 1919, pages 206-39. As between the employer and employee, in exchange for a guarantee of compensation, based on the type of injury received and the weekly wages of the employee, the employee agreed to allow the employer to be immune from common law liability."

Reed v. Brunson, 527 So.2d at 107 (emphasis added).
In 1984, the legislature set out its intent with regard to the exclusivity provisions of the Act:
"The intent of the Legislature is to provide complete immunity to employers and limited immunity to officers, directors, agents, servants or employees of the same employer and to the workers' compensation insurance carrier and compensation service companies of the employer or any officer, director, agent, servant, or employee representative thereof, from civil liability in all causes of action except those based on willful conduct and such immunity is an essential aspect of the workers' compensation scheme. The Legislature hereby expressly reaffirms its intent, as set forth in section 25-5-53 ... regarding the exclusivity of the rights and remedies of an injured employee, except as provided for herein."
Section 25-5-14, Ala.Code 1975 (emphasis added). The portions of § 25-5-14 emphasized here indicate the legislature's *327 intent to provide complete immunity to employers, and limited immunity to coemployees and other entities connected with employers because, according to the legislature, "such immunity is an essential aspect of the workers' compensation scheme." On the other hand, the legislature has determined that immunity for third parties unconnected to the employer or to the employment relationship is not an essential aspect of the workers' compensation scheme. See § 25-5-11(a), Ala.Code 1975 (allowing an action by the worker against a third-party tortfeasor). Compare § 25-5-57(c), Ala.Code 1975 (permitting the employer a set-off against workers' compensation benefits "if and only if" the employer paid the worker benefits under a disability retirement plan). When a worker contracts with his own insurer for UM coverage, that contract has no connection with the worker's employment relationship. We, therefore, cannot conclude that a contract action against a worker's own insurer to recover UM benefits pursuant to coverage for which the worker, or someone on his behalf, paid a premium undermines any essential aspect of the workers' compensation scheme.
State Farm contends that Carlton's suit for UM benefits is barred by the exclusivity provisions of the Act because, to be entitled to UM benefits, Carlton must invoke the Act and must rely on his negligent coemployee's immunity under the Act. In other words, State Farm argues that because Carlton cannot sue his coemployee, he also cannot sue State Farm because, for purposes of UM coverage, State Farm steps into the shoes of the immune coemployee. We believe that Baldwin, Jeffers, and Hogan foreclose that argument. Those decisions stand for the proposition that a UM insurer does not step into the shoes of the immune tortfeasor for purposes of asserting an immunity defense. It would be unlikely, as well as illogical, for our supreme court to decide that the insurer steps into the immune tortfeasor's shoes for one purpose but not for another. Therefore, we conclude that Carlton's action against State Farm cannot be distinguished from Baldwin, Jeffers, and Hogan on the basis of the exclusivity provisions of the Act.
State Farm next argues that the outcomes in Baldwin, Jeffers, and Hogan turned on the fact that, in each of those three cases, the injured party's inability to bring a tort action against the negligent party caused the injuries to be unredressed. Thus, State Farm maintains, UM benefits were the only source of indemnification in Baldwin, Jeffers, and Hogan.
In contrast, State Farm points out that, although Carlton cannot bring a tort action against his negligent coemployee, his injuries have not been unredressed because he has received worker's compensation benefits. In Allstate Insurance Co. v. Boynton, 486 So.2d 552 (Fla.1986), the Florida Supreme Court agreed with the argument now advanced by State Farm. It stated:
"In Florida a source of indemnification for a worker injured by a co-worker driving an uninsured vehicle is already available, i.e., the benefits of the Workers' Compensation Law. Society's goal of protecting the worker under this circumstance has been achieved. We do not need to torture the meaning of a statute [requiring UM coverage] aimed at curing another ill entirely to provide a remedy where one has already been provided."
Boynton, 486 So.2d at 558. In Kough v. New Jersey Automobile Full Insurance Underwriting Ass'n, 237 N.J.Super. 460, 568 A.2d 127 (1990), the New Jersey court, commenting on the concern our own supreme *328 court, in Baldwin, expressed with regard to the problem of uncompensated injuries, stated:

"Baldwin, supra, the Alabama serviceman's case, found coverage at least in part because it detected a legislative intent to provide some source of recompense for the victim of an uninsured motorist. 470 So.2d at 1233. However, where the victim can obtain some redress through workers' compensation benefits that problem is not present. This point was emphasized by the Perkins [v. Insurance Co. of North America, 799 F.2d 955, 961 (5th Cir.1986) (construing Mississippi law)] court:
"`In these cases involving tort immunities, there exists a situation where there may be no compensation whatever from any source (including Workers' Compensation) for injuries incurred in an accident, and as the Baldwin court held, this result runs counter to the theme of providing coverage which underlies uninsured motorist statutes. [Baldwin, 470 So.2d] at 1234. Here, on the other hand, there is recovery under Workers' Compensation for this particular injury and the result is not a complete bar to any recovery by a claimant for his injuries.'"
Kough v. New Jersey Auto. Full Ins. Underwriting Ass'n, 237 N.J.Super. at 466, 568 A.2d at 131.
We conclude that the fact that Carlton had received workers' compensation benefits for his injuries does distinguish this case from Baldwin, Jeffers, and Hogan. In the event that our supreme court finds that distinction insufficient to remove this case from the rule of Baldwin, Jeffers, and Hogan, we ask the court to revisit the holdings of those cases. See Knowles v. State Farm Mut. Auto. Ins. Co., 781 So.2d 211, 214 (Ala.2000) (Houston, J., concurring in the result, and Lyons, J., concurring in the result, joined by Hooper, C.J., and See, J.).
The judgment of the Montgomery Circuit Court is reversed, and the cause is remanded.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
YATES, P.J., and MURDOCK, J., dissent.
YATES, Presiding Judge, dissenting.
I would affirm the judgment of the trial court based on the authority of Hogan v. State Farm Mutual Automobile Insurance Co., 730 So.2d 1157 (Ala.1998), overruled on other grounds, Williamson v. Indianapolis Life Insurance Co., 741 So.2d 1057 (Ala.1999); State Farm Mutual Automobile Insurance Co. v. Jeffers, 686 So.2d 248 (Ala.1996); and State Farm Automobile Insurance Co. v. Baldwin, 470 So.2d 1230 (Ala. 1985); therefore, I respectfully dissent from the main opinion.
MURDOCK, Judge, dissenting.
Both the statute and the insurance policy at issue in this case contain rather straightforward, unambiguous language. Section 32-7-23, Ala.Code 1975, provides "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." (Emphasis added.) In accord with this statutory provision, the automobile insurance policy purchased by Carlton's family from State Farm provides that "[State Farm] will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." (Emphasis added.)
*329 Because of the bar imposed by § 25-5-11, Ala.Code 1975, Carlton is not "legally entitled to recover," or "collect," damages from the tortfeasor, his coemployee. Initially, therefore, State Farm logically argues that Carlton is not entitled to uninsured-motorist ("UM") benefits under the terms of the policy. See, e.g., Laidlaw Trans., Inc. v. Alabama Educ. Ass'n, 769 So.2d 872 (Ala.2000) (words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says); City of Rainsville v. State Farm Mut. Auto. Ins. Co., 716 So.2d 710 (Ala.Civ.App.1998) (unambiguous insurance policy is not to be construed to mean anything except what is set out in plain language).
However, this court's review of this case cannot end with the terms of the statute or the policy. Beginning with the case of State Farm Automobile Insurance Co. v. Baldwin, 470 So.2d 1230 (Ala.1985), our Supreme Court has looked to the "legislative policy" underlying Alabama's UM statute in construing § 32-7-23 and insurance policies such as that herein at issue.
State Farm's threshold position in the present case is the same position it took in Baldwin. In Baldwin, the Alabama Supreme Court responded to that position by acknowledging (1) that § 32-7-23 does contain the restricting language "legally entitled to recover"; (2) that the claimants therein were not legally entitled to recover from the tortfeasors, because of governmental immunity; and (3) that, under State Farm Mutual Automobile Insurance Co. v. Griffin, 51 Ala.App. 426, 286 So.2d 302 (Ala.Civ.App.1973), the insurer's obligation under its UM policy provisions was limited by "substantive defenses that would have been available" to the tortfeasor. 470 So.2d at 1233. The Baldwin court therefore concluded that State Farm's position was "technically correct." Baldwin, 470 So.2d at 1234. Nevertheless, the court determined that the "legislative policy" underlying the statute did not allow State Farm to prevail.
That legislative policy, as the Baldwin court identified it, was to enable "one who wishes to protect himself against the negligence of an uninsured driver ... to contract with an insurer and, by paying an appropriate premium, receive such coverage." Id. at 1233 (emphasis added). Similarly, in State Farm Mutual Automobile Insurance Co. v. Jeffers, 686 So.2d 248 (Ala.1996), our Supreme Court stated that "the design of the statute is to protect an injured person who can prove ... that he was injured as a proximate result of the negligence of another motorist who cannot respond in damages for such injuries." 686 So.2d at 249-50 (emphasis added). Similarly, in Hogan v. State Farm Mutual Automobile Insurance Co., 730 So.2d 1157 (Ala.1998), the court decided that the fact that Alabama's Guest Statute, § 32-1-2, Ala.Code 1975, "immunizes the tortfeasor" does not affect the injured party's entitlement to UM benefits. 730 So.2d at 1158-59 (emphasis added).
In his dissenting opinion in Hogan, Justice Lyons voiced concern that the Supreme Court's decisions had construed the statutory phrase "legally entitled to recover" as "legally entitled to recover but for a defense [of the tortfeasor] that does not arise out of any wrongful conduct of the insured." 730 So.2d at 1159 (Lyons, J., dissenting). As the majority notes, Justice Lyons then predicted that, under that construction, an "employee/passenger in a company-owned automobile who is precluded, by § 25-5-11, Ala.Code 1975, from recovering against a fellow employee/driver for negligence or wanton misconduct would be entitled to payment under his or *330 her uninsured motorist coverage." Hogan, 730 So.2d at 1159-60 (Lyons, J., dissenting). See also Knowles v. State Farm Mut. Auto. Ins. Co., 781 So.2d 211, 214 (Ala.2000) (Houston, J., concurring in the result and stating that he would overrule Hogan; Lyons, J., concurring in the result with an opinion to the same effect, joined by Hooper, C.J., and See, J.).
Unlike the majority, I believe Justice Lyons predicted correctly. If, as indicated by the above-quoted passages from Baldwin, Jeffers, and Hogan, the legislative policy governing the construction of § 32-7-23 is one that focuses on a negligent motorist's lack of responsibility, whether by virtue of lack of insurance or by virtue of legal immunity, I can see no distinction between the viability of the insured's claim for benefits in the present case and the claims for benefits in Baldwin, Jeffers, and Hogan.
State Farm argues, however, that this case is distinguishable from Baldwin, Jeffers, and Hogan because there is a source of compensation for the injured party through his workers'-compensation benefits. Even if workers'-compensation benefits were properly considered for this purpose, such benefits do not cover all the damages that an employee might suffer (e.g., pain and suffering and some lost wages). Yet, our law protects insureds against underinsured motorists ("UIM") just as it does against uninsured motorists. See Ala.Code 1975, § 32-7-23(b)(4). To the extent that one-third of the insured's lost wages or some other aspect of his or her damages are not to be paid under the workers'-compensation statute, the offending motor vehicle logically would have to be considered underinsured, thereby entitling the insured to a payment of UIM benefits.
Moreover, I do no believe the availability of workers'-compensation benefits makes the vehicle that injured Carlton an "insured motor vehicle" within the meaning of Alabama's uninsured-motorist statute. As applied in this case, that statute is concerned with the potential liability of two separate tortfeasors from whom an injured party typically might be entitled to recover: the owner of a vehicle and the operator of the vehicle. (Although, in some situations, the owner may have imputed responsibility for the acts of the operator (e.g., if there is a principal/agent or employer/employee relationship), the injured party has separate causes of action and separate rights of recovery against each of these separate tortfeasors.) Thus, under the statute, if there is no insurance on an offending vehicle, or either the owner or the operator is not covered by any insurance that does exist, then the vehicle is an "uninsured motor vehicle" in that respect, and UM benefits are payable.[3]
Further, treatment of workers'-compensation benefits as a substitute for motor vehicle insurance within the meaning of § 32-7-23 will, in my opinion, give rise to additional questions in an endless variety of other circumstances, questions that cannot be answered in a consistent and logical manner from one case to another. For example, if an employee's entitlement to workers'-compensation benefits prevents him from receiving UM benefits under the circumstances of the present case, what result when the injury occurs while an employee is on company business in an *331 uninsured car driven negligently by a customer or contractor of his employer? The employee will receive the same workers'-compensation benefits that, it is contended, deprive him of the right to receive UM benefits in the present case. Yet, he clearly has been injured by the "owner or operator" of an "uninsured motor vehicle." This and other potential inconsistencies are, in my view, the product of attempting to merge two legislatively created schemes, the workers'-compensation statute and the uninsured/underinsured-motorist statute, not designed to be interjected into one another. I therefore believe the majority in this case is right when, in the context of the issue of exclusivity, it states that "when a worker contracts with his own insurer for UM coverage, that contract has no connection with the worker's employment relationship." 867 So.2d at 327.
Finally, State Farm points to a Florida Supreme Court decision holding that injured parties are not entitled to UM benefits if their injuries are to be redressed through workers'-compensation benefits, because, under the Florida court's reasoning, a very broadly defined public-policy objective"[s]ociety's goal of protecting the worker" by ensuring at least some compensation from at least some source will be met. Allstate Ins. Co. v. Boynton, 486 So.2d 552, 559 (Fla.1986) (also concluding that it need not "torture the meaning of a statute [requiring UM coverage] ... to provide a remedy where one has already been provided"). Similarly, the New Jersey court in Kough v. New Jersey Automobile Full Insurance Underwriting Association, 237 N.J.Super. 460, 568 A.2d 127 (App.Div.1990), pinned its analysis on a perceived broad legislative intent behind New Jersey's uninsured-motorist statute: to provide "some source of recompense" for the victim of the uninsured motorist. Id. at 468, 568 A.2d at 132. I do not read Alabama's UM statute in this manner, and, again, I do not believe that such a reading will yield logically consistent and proportionate results in all cases that might arise.
The text of Alabama's UM statute does not, in my opinion, evidence an in intent simply to provide to an insured at least some compensation from some source. Instead, as indicated by both the statute and the above-discussed cases, the purpose of the uninsured-motorist coverage is to enable one who wishes to do so to pay an appropriate premium and, in return, receive from his insurer a contractually agreed-upon measure of protection against the acts of uninsured motorists. Indeed, in Higgins v. Nationwide Mutual Insurance Co., 291 Ala. 462, 282 So.2d 301 (1973), our Supreme Court rejected the argument that the fact that an uninsured motorist might be financially responsible in damages would cause the case to fall within any exclusion in the UM statute. 291 Ala. at 466, 282 So.2d at 305. Yet, the New Jersey court in Kough purports to distinguish Baldwin, which expressly relied upon Higgins (see Baldwin, 470 So.2d at 1232), on the ground that a third party not even the uninsured driver himselfis able to respond in damages. Kough, 568 A.2d at 131. I find nothing in the language of the statute suggesting that whether some third party is available to pay any or all of the insured's damages was within the calculus of the Legislature in enacting Alabama's UM statute.
The approach of the Florida and New Jersey courts may have some surface attraction by virtue of the three-way relationship that exists between the injured party and the two tortfeasors at issue: a coemployee and an employer. If the policy objective of simply assuring some compensation from some source is to be deemed appropriate, however, it must be found to yield consistent results from one *332 case to another. What result when an employee entitled to workers'-compensation benefits is injured while on business in a car driven by an insured third party? What if he is injured by two tortfeasors who have no relation to one another or to the insured's employer, yet one of them agrees to pay for all or part of the damages? Under the broad Florida/New Jersey policy objective, should UM benefits not be denied in these situations? Again, I see nothing in the language of the statute to suggest such results.
The language of § 32-7-23 and the language of State Farm's policy, taken alone, would not appear to entitle Carlton to UM benefits. The holdings of Baldwin, Jeffers, and Hogan do. This court is bound by the latter.
Accordingly, I must respectfully dissent.
NOTES
[1] The decisions that allow UM benefits are Southern Farm Bureau Cos. Ins. Co. v. Pettie, 54 Ark.App. 79, 924 S.W.2d 828 (1996), and Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987).

The decisions that deny UM benefits are Allstate Ins. Co. v. Boynton, 486 So.2d 552 (Fla.1986); Williams v. Thomas, 187 Ga.App. 527, 370 S.E.2d 773 (1988); State Farm Mut. Auto. Ins. Co. v. Royston, 72 Haw. 338, 817 P.2d 118 (1991); Williams v. Country Mut. Ins. Co., 28 Ill.App.3d 274, 328 N.E.2d 117 (1975); O'Dell v. State Farm Mut. Auto. Ins. Co., 173 Ind.App. 106, 362 N.E.2d 862 (1977), overruled on other grounds by Thiellen v. Graves, 530 N.E.2d 765 (Ind.App. 1988); Mayfield v. Casualty Reciprocal Exchange, 442 So.2d 894 (La.App. 1983), cert. denied, 445 So.2d 1230 (La.1984); Hopkins v. Auto-Owners Ins. Co., 41 Mich.App. 635, 200 N.W.2d 784 (1972); Peterson v. Kludt, 317 N.W.2d 43 (Minn. 1982); Kough v. New Jersey Auto. Full Ins. Underwriting Ass'n, 237 N.J.Super. 460, 568 A.2d 127 (1990); Cormier v. National Farmers Union Prop. & Cos. Co., 445 N.W.2d 644 (N.D.1989); State Farm Mut. Auto. Ins. Co. v. Webb, 54 Ohio St.3d 61, 562 N.E.2d 132 (1990) (superseded by statute, Ohio Rev. Code Ann. § 3937.18(F) (Anderson 1996)); Cope v. West American Ins. Co., 309 Or. 232, 785 P.2d 1050 (1990); Federal Kemper Ins. Co. v. Wales, 430 Pa.Super. 208, 633 A.2d 1212 (1993); Valentine v. Safeco Lloyds Ins. Co., 928 S.W.2d 639 (Tex.Ct.App.1996); Peterson v. Utah Farm Bureau Ins. Co., 927 P.2d 192 (Utah Ct.App.1996); Aetna Cas. & Sur. Co. v. Dodson, 235 Va. 346, 367 S.E.2d 505 (1988); Romanick v. Aetna Cas. & Sur. Co., 59 Wash.App. 53, 795 P.2d 728 (1990).
[2] The general rule is that "[i]nsofar as the uninsured motorist coverage has been bought and paid for by someone other than the injured employee, ... [t]he injured employee cannot recover uninsured motorist benefits under the uninsured motorist coverage in policies obtained by his or her employer, partner, or the negligent coemployee." See Ludington, Annot., 82 A.L.R.4th at 1099. See also Medders v. United States Fidelity & Guar. Co., 623 So.2d 979 (Miss. 1993); Chance v. Farm Bureau Mut. Ins. Co., 756 F.Supp. 1440 (D.Kan.1991); Hubbel v. Western Fire Ins. Co., 218 Mont. 21, 706 P.2d 111 (1985); Wisman v. Rhodes & Shamblin Stone, Inc., 191 W.Va. 542, 447 S.E.2d 5 (1994). Kentucky appears to be the sole exception to the rule. See Philadelphia Indem. Ins. Co. v. Morris, 990 S.W.2d 621 (Ky.1999).

In Alabama, such a claim would probably be denied on grounds unrelated to the interplay between the Workers' Compensation Act and the UM statute. See Allstate Ins. Co. v. Hardnett, 763 So.2d 963 (Ala.2000) (holding that a vehicle is not within the definition of "uninsured auto" if it is included in the liability coverage of the same policy). See also Dale v. Home Ins. Co., 479 So.2d 1290 (Ala. Civ.App.1985) (holding that a fireman injured by a negligent coworker was not entitled to UM benefits under his employer's automobile policy because the firetruck in which he was injured was an insured vehicle under the same policy).
[3] The UM insurer may be able to take advantage of a right of set-off held by either the owner or the operator when damages are paid by or on behalf of the other, but that fact relates to the threshold issue whether an injured party is "legally entitled to recover" from the tortfeasor who has the set-off right, a different question from the question whether the vehicle is uninsured as to either the owner or the operator.