Both the statute and the insurance policy at issue in this case contain rather straightforward, unambiguous language. Section 32-7-23, Ala. Code 1975, provides "protection of persons insured thereunder who are legallyentitled to recover damages from owners or operators of uninsured motor vehicles." (Emphasis added.) In accord with this statutory provision, the automobile insurance policy purchased by Carlton's family from State Farm provides that "[State Farm] will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." (Emphasis added.) *Page 329 
Because of the bar imposed by § 25-5-11, Ala. Code 1975, Carlton is not "legally entitled to recover," or "collect," damages from the tortfeasor, his coemployee. Initially, therefore, State Farm logically argues that Carlton is not entitled to uninsured-motorist ("UM") benefits under the terms of the policy. See, e.g., Laidlaw Trans., Inc. v. AlabamaEduc. Ass'n, 769 So.2d 872 (Ala. 2000) (words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says); City of Rainsville v. State FarmMut. Auto. Ins. Co., 716 So.2d 710 (Ala.Civ.App. 1998) (unambiguous insurance policy is not to be construed to mean anything except what is set out in plain language).
However, this court's review of this case cannot end with the terms of the statute or the policy. Beginning with the case of State FarmAutomobile Insurance Co. v. Baldwin, 470 So.2d 1230 (Ala. 1985), our Supreme Court has looked to the "legislative policy" underlying Alabama's UM statute in construing § 32-7-23 and insurance policies such as that herein at issue.
State Farm's threshold position in the present case is the same position it took in Baldwin. In Baldwin, the Alabama Supreme Court responded to that position by acknowledging (1) that § 32-7-23 does contain the restricting language "legally entitled to recover"; (2) that the claimants therein were not legally entitled to recover from the tortfeasors, because of governmental immunity; and (3) that, under StateFarm Mutual Automobile Insurance Co. v. Griffin, 51 Ala. App. 426,286 So.2d 302 (Ala.Civ.App. 1973), the insurer's obligation under its UM policy provisions was limited by "substantive defenses that would have been available" to the tortfeasor. 470 So.2d at 1233. The Baldwin court therefore concluded that State Farm's position was "technically correct."Baldwin, 470 So.2d at 1234. Nevertheless, the court determined that the "legislative policy" underlying the statute did not allow State Farm to prevail.
That legislative policy, as the Baldwin court identified it, was to enable "one who wishes to protect himself against the negligence of anuninsured driver . . . to contract with an insurer and, by paying an appropriate premium, receive such coverage." Id. at 1233 (emphasis added). Similarly, in State Farm Mutual Automobile Insurance Co. v.Jeffers, 686 So.2d 248 (Ala. 1996), our Supreme Court stated that "the design of the statute is to protect an injured person who can prove . . . that he was injured as a proximate result of the negligence of anothermotorist who cannot respond in damages for such injuries." 686 So.2d at 249-50 (emphasis added). Similarly, in Hogan v. State Farm MutualAutomobile Insurance Co., 730 So.2d 1157 (Ala. 1998), the court decided that the fact that Alabama's Guest Statute, § 32-1-2, Ala. Code 1975, "immunizes the tortfeasor" does not affect the injured party's entitlement to UM benefits. 730 So.2d at 1158-59 (emphasis added).
In his dissenting opinion in Hogan, Justice Lyons voiced concern that the Supreme Court's decisions had construed the statutory phrase "legally entitled to recover" as "legally entitled to recover but for a defense [of the tortfeasor] that does not arise out of any wrongful conduct of the insured." 730 So.2d at 1159 (Lyons, J., dissenting). As the majority notes, Justice Lyons then predicted that, under that construction, an "employee/passenger in a company-owned automobile who is precluded, by § 25-5-11, Ala. Code 1975, from recovering against a fellow employee/driver for negligence or wanton misconduct would be entitled to payment under his or *Page 330 
her uninsured motorist coverage." Hogan, 730 So.2d at 1159-60 (Lyons, J., dissenting). See also Knowles v. State Farm Mut. Auto. Ins. Co.,781 So.2d 211, 214 (Ala. 2000) (Houston, J., concurring in the result and stating that he would overrule Hogan; Lyons, J., concurring in the result with an opinion to the same effect, joined by Hooper, C.J., and See, J.).
Unlike the majority, I believe Justice Lyons predicted correctly. If, as indicated by the above-quoted passages from Baldwin, Jeffers, andHogan, the legislative policy governing the construction of § 32-7-23
is one that focuses on a negligent motorist's lack of responsibility, whether by virtue of lack of insurance or by virtue of legal immunity, I can see no distinction between the viability of the insured's claim for benefits in the present case and the claims for benefits in Baldwin,Jeffers, and Hogan.
State Farm argues, however, that this case is distinguishable fromBaldwin, Jeffers, and Hogan because there is a source of compensation for the injured party through his workers'-compensation benefits. Even if workers'-compensation benefits were properly considered for this purpose, such benefits do not cover all the damages that an employee might suffer (e.g., pain and suffering and some lost wages). Yet, our law protects insureds against underinsured motorists ("UIM") just as it does against uninsured motorists. See Ala. Code 1975, § 32-7-23(b)(4). To the extent that one-third of the insured's lost wages or some other aspect of his or her damages are not to be paid under the workers'-compensation statute, the offending motor vehicle logically would have to be considered underinsured, thereby entitling the insured to a payment of UIM benefits.
Moreover, I do no believe the availability of workers'-compensation benefits makes the vehicle that injured Carlton an "insured motor vehicle" within the meaning of Alabama's uninsured-motorist statute. As applied in this case, that statute is concerned with the potential liability of two separate tortfeasors from whom an injured party typically might be entitled to recover: the owner of a vehicle and the operator of the vehicle. (Although, in some situations, the owner may have imputed responsibility for the acts of the operator (e.g., if there is a principal/agent or employer/employee relationship), the injured party has separate causes of action and separate rights of recovery against each of these separate tortfeasors.) Thus, under the statute, if there is no insurance on an offending vehicle, or either the owner or the operator is not covered by any insurance that does exist, then the vehicle is an "uninsured motor vehicle" in that respect, and UM benefits are payable.[3]
Further, treatment of workers'-compensation benefits as a substitute for motor vehicle insurance within the meaning of § 32-7-23 will, in my opinion, give rise to additional questions in an endless variety of other circumstances, questions that cannot be answered in a consistent and logical manner from one case to another. For example, if an employee's entitlement to workers'-compensation benefits prevents him from receiving UM benefits under the circumstances of the present case, what result when the injury occurs while an employee is on company business in an *Page 331 
uninsured car driven negligently by a customer or contractor of his employer? The employee will receive the same workers'-compensation benefits that, it is contended, deprive him of the right to receive UM benefits in the present case. Yet, he clearly has been injured by the "owner or operator" of an "uninsured motor vehicle." This and other potential inconsistencies are, in my view, the product of attempting to merge two legislatively created schemes, the workers'-compensation statute and the uninsured/underinsured-motorist statute, not designed to be interjected into one another. I therefore believe the majority in this case is right when, in the context of the issue of exclusivity, it states that "when a worker contracts with his own insurer for UM coverage, that contract has no connection with the worker's employment relationship." 867 So.2d at 327.
Finally, State Farm points to a Florida Supreme Court decision holding that injured parties are not entitled to UM benefits if their injuries are to be redressed through workers'-compensation benefits, because, under the Florida court's reasoning, a very broadly defined public-policy objective — "[s]ociety's goal of protecting the worker" by ensuring at least some compensation from at least some source — will be met. Allstate Ins. Co. v. Boynton, 486 So.2d 552, 559 (Fla. 1986) (also concluding that it need not "torture the meaning of a statute [requiring UM coverage] . . . to provide a remedy where one has already been provided"). Similarly, the New Jersey court in Kough v. New JerseyAutomobile Full Insurance Underwriting Association, 237 N.J. Super. 460,568 A.2d 127 (App.Div. 1990), pinned its analysis on a perceived broad legislative intent behind New Jersey's uninsured-motorist statute: to provide "some source of recompense" for the victim of the uninsured motorist. Id. at 468, 568 A.2d at 132. I do not read Alabama's UM statute in this manner, and, again, I do not believe that such a reading will yield logically consistent and proportionate results in all cases that might arise.
The text of Alabama's UM statute does not, in my opinion, evidence an in intent simply to provide to an insured at least some compensation fromsome source. Instead, as indicated by both the statute and the above-discussed cases, the purpose of the uninsured-motorist coverage is to enable one who wishes to do so to pay an appropriate premium and, in return, receive from his insurer a contractually agreed-upon measure of protection against the acts of uninsured motorists. Indeed, in Higgins v.Nationwide Mutual Insurance Co., 291 Ala. 462, 282 So.2d 301 (1973), our Supreme Court rejected the argument that the fact that an uninsured motorist might be financially responsible in damages would cause the case to fall within any exclusion in the UM statute. 291 Ala. at 466,282 So.2d at 305. Yet, the New Jersey court in Kough purports to distinguishBaldwin, which expressly relied upon Higgins (see Baldwin, 470 So.2d at 1232), on the ground that a third party — not even the uninsured driver himself — is able to respond in damages. Kough, 568 A.2d at 131. I find nothing in the language of the statute suggesting that whether some third party is available to pay any or all of the insured's damages was within the calculus of the Legislature in enacting Alabama's UM statute.
The approach of the Florida and New Jersey courts may have some surface attraction by virtue of the three-way relationship that exists between the injured party and the two tortfeasors at issue: a coemployee and an employer. If the policy objective of simply assuring some compensation from some source is to be deemed appropriate, however, it must be found to yield consistent results from one *Page 332 
case to another. What result when an employee entitled to workers'-compensation benefits is injured while on business in a car driven by an insured third party? What if he is injured by two tortfeasors who have no relation to one another or to the insured's employer, yet one of them agrees to pay for all or part of the damages? Under the broad Florida/New Jersey policy objective, should UM benefits not be denied in these situations? Again, I see nothing in the language of the statute to suggest such results.
The language of § 32-7-23 and the language of State Farm's policy, taken alone, would not appear to entitle Carlton to UM benefits. The holdings of Baldwin, Jeffers, and Hogan do. This court is bound by the latter.
Accordingly, I must respectfully dissent.
[3] The UM insurer may be able to take advantage of a right of set-off held by either the owner or the operator when damages are paid by or on behalf of the other, but that fact relates to the threshold issue whether an injured party is "legally entitled to recover" from the tortfeasor who has the set-off right, a different question from the question whether the vehicle is uninsured as to either the owner or the operator.